MICHAEL M. LAUTER, Cal Bar No. 246048
JEANNIE KIM, Cal Bar No. 270713
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
Email:        mlauter@sheppardmullin.com
              jekim@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
THEODORE COHEN, Cal. Bar No. 151427
AARON J. MALO, Cal. Bar No. 179985
ANASTASIA K. BILLY, Cal. Bar No. 210416
SARAH A. K. BLITZ, Cal. Bar No. 280118
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213-620-1780
Facsimile:    213-620-1398

Attorneys for Plaintiff U.S. Bank National Association
(as successor in interest to MUFG Union Bank, N.A.)

IN THE UNITED STATES DISTRICT COURT,

EASTERN DISTRICT OF CALIFORNIA, FRESNO

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION (as successor in interest to MUFG Union Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> DARIUS ASSEMI, an individual and as trustee of the Amended and Restated Darius Assemi Revocable Trust; FARID ASSEMI, an individual, and as trustee of the Amended and Restated Farid Assemi Revocable Trust, and as trustee of the Farshid Assemi 1997 Ranch Trust; FARSHID ASSEMI, an individual, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, and as co-trustee of the Farid | No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT** |

-1-

Assemi 1997 Ranch Trust; SONIA ROSEMARY ASSEMI, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust; NEEMA ELIOT ASSEMI, as co-trustee of the Farid Assemi 1997 Ranch Trust, and as trustee of the Farid Assemi 2010 Grantor Trust dated December 30, 2010; MELISSA LAYNE, as trustee of the Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010; and DOES 1-50 inclusive,

Defendants.

Plaintiff U.S. BANK NATIONAL ASSOCIATION, a national banking association and successor-in-interest to MUFG Union Bank, N.A., a national banking association ("Plaintiff") alleges as follows:

**JURISDICTION & VENUE**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties (Plaintiff is a citizen of Ohio, and all defendants are citizens of California), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. U.S. Bank's main office is in Cincinnati, Ohio. U.S. Bank is therefore located in Ohio. As such, for purposes of diversity jurisdiction, U.S. Bank is a citizen of Ohio. 28 U.S.C. §1348.

3. Plaintiff is informed and believes and based thereon alleges that all of the defendants are citizens of the State of California because all of them are domiciled in the State of California.

4. Venue is proper in this Court because all defendants are residents of California, and at least one defendant resides in this judicial district. 28 U.S.C. §1391(a). Venue is also independently proper in this Court because a substantial part of the events and omissions giving rise to this action occurred in the County of Fresno, California. 28 U.S.C. §1391(b).

**INTRODUCTION**

5. Beginning in 2012, Plaintiff made a series of loans (the "Loans") to various entities comprising four related groups of borrowers referred to as the "Maricopa Borrower," the "Lincoln

Borrower," the "Panoche Borrower," and the "Sageberry Borrower."  All such borrower entities are collectively referred to hereinafter as "Borrowers."  Eventually, the maximum outstanding principal balance of the Loans was increased to $150,000,000.

6. To induce Plaintiff to extend such substantial Loans to the Borrowers, certain of the Borrowers' principals (collectively, the "Guarantors") agreed to provide Plaintiff with guaranties of the Borrowers' indebtedness.  Absent the additional sources for recovery represented by the Guarantors, Plaintiff would not have made such sizable Loans to the Borrowers.

7. Now that the Borrowers have defaulted, Plaintiff brings this action to force the Guarantors to make good on their obligations.

## PARTIES, JURISDICTION, AND VENUE

8. U.S. Bank National Association ("U.S. Bank") is a national banking association chartered under the laws of the United States of America.  At all relevant times, U.S. Bank was, and now is, duly qualified and authorized to do business in California.  U.S. Bank is the successor in interest by merger to MUFG Union Bank, N.A., and has all of its rights, powers and interests in connection with the subject matter of this action.

9. Plaintiff is informed and believes and based thereon alleges that Darius Assemi is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno.  Plaintiff is further informed and believes and based thereon alleges that Darius Assemi is, and at all times material hereto was, the trustee of the Amended and Restated Darius Assemi Revocable Trust, which was established under California law.  Darius Assemi, in his individual capacity and as trustee of the Amended and Restated Darius Assemi Revocable Trust, is among the Guarantors.

10. Plaintiff is informed and believes and based thereon alleges that Farid Assemi is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno.  Plaintiff is further informed and believes and based thereon alleges that Farid Assemi is, and at all times material hereto, the trustee of the Amended and Restated Farid Assemi Revocable Trust, which was established under California law, as well as the trustee of the Farshid Assemi 1997 Ranch Trust, which was established under

California law.  Farid Assemi, in his individual capacity, as trustee of the Amended and Restated Farid Assemi Revocable Trust, and as the trustee of the Farshid Assemi 1997 Ranch Trust, is among the Guarantors.

11. Plaintiff is informed and believes and based thereon alleges that Farshid Assemi is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno.  Plaintiff is further informed and believes and based thereon alleges that Farshid Assemi is, and at all times material hereto, a co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, which was established under California law, as well as a co-trustee of the Farid Assemi 1997 Ranch Trust, which was established under California law.  Farshid Assemi, in his individual capacity, and as co-trustee of the Farid Assemi 1997 Ranch Trust, is among the Guarantors.

12. Plaintiff is informed and believes and based thereon alleges that Sonia Rosemary Assemi is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno, as well as a co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, which was established under California law.  Sonia Rosemary Assemi, in her capacity as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, is among the Guarantors.

13. Plaintiff is informed and believes and thereon alleges that Neema Eliot Assemi is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno, as well as a co-trustee of the Farid Assemi 1997 Ranch Trust, which was established under California law, and the trustee of the Farid Assemi 2010 Grantor Trust dated December 30, 2010, which was established under California law.  Neema Eliot Assemi, in his individual capacity and in her capacity as a co-trustee of the Farid Assemi 1997 Ranch Trust, is among the Guarantors.

14. Plaintiff is informed and believes and thereon alleges that Melissa Layne is, and at all times material hereto was, an individual residing in and regularly conducting business in and around the State of California, County of Fresno, as well as the trustee of the Farshid and Sonia

Assemi 2010 Grantor Trust, which was established under California law. Melissa Layne, in her capacity as trustee of the Farshid and Sonia Assemi 2010 Grantor Trust, is among the Guarantors.

15. The true names and capacities, whether individual, corporate, associate, or otherwise of defendants Does 1 through 50, inclusive (collectively, the "Doe Defendants"), are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the Doe Defendants was in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains herein, and in some fashion has legal responsibility therefore. When the true names of the Doe Defendants and, as appropriate, their respective responsibility for, participation in, and contribution to the matters and things herein alleged are ascertained by Plaintiff, Plaintiff will seek leave to amend this Complaint to set forth the same. The Doe Defendants and the Guarantors are sometimes collectively referred to hereinafter as the "Defendants."

## GENERAL ALLEGATIONS

### *The Loans and the Loan Documents*

16. On or about March 25, 2019, Plaintiff and the Borrowers entered into various documents in connection with the Loans (collectively, as thereafter modified, supplemented, and amended from time to time, the "Loan Documents"), including that certain Second Amended and Restated Loan and Security Agreement (the "Loan Agreement"), which amended and restated certain prior documents associated with the Loans as set forth therein.

17. Concurrently therewith, on or about March 25, 2019, the Guarantors executed that certain Fifth Amended and Restated Continuing Guaranty (as thereafter modified, supplemented, amended, and reaffirmed from time to time, the "Continuing Guaranty"), which amended and restated certain prior guaranties as set forth therein. Pursuant to the Continuing Guaranty, each of the Guarantors guarantied payment and performance of all of the Borrowers' obligations to Plaintiff under the Loan Documents and in connection with the Loans. Nonetheless, the Guarantors' liability under the Continuing Guaranty is limited to the maximum amount of $114,000,000 in principal, plus interest, fees, and charges thereon, as well as certain other amounts specified therein. A true

and correct copy of the Continuing Guaranty is attached hereto as **Exhibit A** and incorporated herein by this reference.

18. The Loan Documents were thereafter further amended on a number of occasions. Ultimately, the maximum principal balance of the Loans was changed to the increased amount of $149,000,000, plus an additional and separate $11,580,840 (the "Harvest Line"), as reflected in, among other things, that certain Ninth Amended and Restated Revolving Note dated December 13, 2022 executed by the Borrowers in favor of Plaintiff (the "Ninth Note"), that certain Harvest Line Promissory Note dated October 30, 2024 (the "Harvest Note") executed by the Borrowers in favor of Plaintiff, and that certain Fifth Amendment to the Loan Agreement dated October 30, 2024 (the "Fifth Amendment") which also further amended the Ninth Note. The Ninth Note, the Harvest Note, and the Fifth Amendment are among the Loan Documents. A true and correct copy of the Ninth Note is attached hereto as **Exhibit B** and incorporated herein by this reference. A true and correct copy of the Harvest Note is attached hereto as **Exhibit C** and incorporated herein by this reference. A true and correct copy of the Fifth Amendment is attached hereto as **Exhibit D** and incorporated herein by this reference.

19. The Guarantors consented to each of the amendments of the Loan Documents, through and including the Fifth Amendment. In connection therewith, the Guarantors reaffirmed the Continuing Guaranty and agreed that the Continuing Guaranty guarantees the Borrowers' obligations to Plaintiff under the Loan Documents, as amended. Additionally, the Guarantors also separately guarantied payment and performance of all of the Borrowers' obligations to Plaintiff in connection with the Harvest Line. A true and correct copy of the Guaranty of Harvest Line Commitment and Reaffirmation of Fifth Amended and Restated Continuing Guaranty dated October 30, 2024 (the "Harvest Line Guaranty and Reaffirmation"), executed by all of the Guarantors in connection with the Fifth Amendment, is attached hereto as **Exhibit E** and incorporated herein by this reference.

20. In the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, the Guarantors each waived all rights to require Plaintiff to proceed against the Borrowers, or to pursue any other rights and/or remedies that Plaintiff might have.

21.     But for the promises made by the Guarantors, Plaintiff would not have executed the Loan Documents, would not have agreed to the terms and conditions contained therein, and would not have extended the Loans to the Borrowers.

**<u>*Breach of the Loan Documents*</u>**

22.     Borrowers breached the Loan Documents by failing to comply with numerous of the requirements set forth therein, beginning by on or about December 31, 2022, and continuing thereafter (each, an "<u>Event of Default</u>" and collectively, the "<u>Events of Default</u>").

23.     Under the Loan Documents, upon the occurrence of an Event of Default that is continuing, Plaintiff may, among other things, increase the rate of interest applicable to the Loans to the Default Rate (as defined in the Loan Documents), upon notice to the Borrowers. Additionally, without notice to the Borrowers, Plaintiff may, among other things, declare the entirety of the Loans immediately due and payable.

24.     On multiple occasions during the second half of 2023 and the first half of 2024, Plaintiff provided notice to the Borrowers and the Guarantors regarding various Events of Default under the Loan Documents. Plaintiff also reserved all of its rights and remedies in connection with each such notice.

25.     On or about June 20, 2024, Plaintiff sent a *Notice of Acceleration; Demand for Payment in Full; Notice of Implementation of Default Rate of Interest, and Reservation of Rights* to all of the Borrowers, advising them that as a result of the outstanding Events of Default, Plaintiff had declared all then-outstanding amounts in connection with the Loans immediately due and payable in full, implemented the Default Rate of interest, and was demanding payment in full. A true and correct copy of the *Notice of Acceleration; Demand for Payment in Full; Notice of Implementation of Default Rate of Interest, and Reservation of Rights* is attached hereto as **Exhibit F** and incorporated herein by this reference.

26.     Thereafter, on or about September 15, 2024, Plaintiff sent all of the Guarantors a *Renewed Demand for Payment in Full; and Reservation of Rights*, advising them that Plaintiff had previously declared all then-outstanding amounts in connection with the Loans immediately due and payable in full, and demanding immediate payment by the Guarantors of all amounts then due

under the Loan Documents and the Continuing Guaranty.  A true and correct copy of the *Renewed Demand for Payment in Full; and Reservation of Rights* is attached hereto as **Exhibit G** and incorporated herein by this reference.

27. As of October 18, 2024, the total principal balance then owing under the Loan Documents was $149,000,000, plus accrued and unpaid interest, plus certain other unpaid charges due pursuant to the Loan Documents, plus additional interest, fees, and costs, including legal fees and costs and other expenses incurred by Plaintiff (collectively, the "Prior Loan Balance").

28. In the Fifth Amendment, each of the Borrowers acknowledged and agreed, among other things, that (a) all of the Events of Default continued to exist, and had not been cured or waived; (b) each of the Borrowers had received proper and adequate notice of the Events of Default; (c) interest was accruing at the Default Rate; and (d) the Prior Loan Balance remained owing, and was not subject to any credits or offsets.

29. Pursuant to the terms of the Fifth Amendment, the additional and separate amounts owed by the Borrowers to Plaintiff in connection with the Harvest Line became fully due and payable on November 7, 2024.  Borrowers failed to pay the amounts due in connection with the Harvest Line to Plaintiff on that date.

30. Therefore, on November 12, 2024, Plaintiff sent a notice of default to all of the Borrowers, demanding payment in full of all amounts due in connection with the Harvest Line.  A true and correct copy of such notice of default is attached hereto as **Exhibit H** and incorporated herein by this reference.  To date, the Borrowers have failed to pay any such amounts to Plaintiff.

31. On November 12, 2024, Plaintiff sent a demand for payment to all of the Guarantors, advising them of the Borrowers' failure to repay all amounts due in connection with the Harvest Line on November 7, 2024 as required, and demanding payment in full of all outstanding amounts from the Guarantors.  A true and correct copy of such demand is attached hereto as **Exhibit I** and incorporated herein by this reference.  To date, the Guarantors have failed to pay any such amounts to Plaintiff.

32. As of November 12, 2024, the total principal balance due and owing under the Loan Documents was $160,580,840, comprised of $149,000,000, plus an additional and separate

$11,580,840 in connection with the Harvest Line, plus accrued and unpaid interest, plus certain other unpaid charges due pursuant to the Loan Documents, plus additional interest, fees, and costs, including legal fees and costs and other expenses incurred by Plaintiff (collectively, the "Outstanding Balance"). Interest, legal fees and costs and other expenses, and certain other amounts continue to accrue daily.

33. Despite Plaintiff's demand therefor, the Guarantors have refused and neglected, and continue to refuse and neglect, to cure the Events of Default existing under the Loan Documents, the Continuing Guaranty, and the Harvest Line Guaranty and Reaffirmation, including, without limitation, by failing and refusing to pay any portion of the Outstanding Balance. To date, the entirety of the Outstanding Balance remains outstanding.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

**(Against All Defendants)**

34. Plaintiff repeats and re-alleges each of the prior allegations in this Complaint, and incorporates the same herein by this reference as though set forth in full.

35. Pursuant to the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, the Guarantors each unconditionally guaranteed all of the Borrowers' obligations under the Loan Documents, including, but not limited to, full and timely payment of all amounts owing under the Loan Documents.

36. Plaintiff relied upon the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, and the Guarantors' repeated reaffirmations of their obligations thereunder, in agreeing to the Loan Documents and extending the substantial Loans to the Borrowers.

37. Plaintiff advised the Guarantors of the Events of Default on multiple occasions. Plaintiff also expressly demanded payment in full from the Guarantors of all amounts owing in connection with the Loans, including the separate amounts owing in connection with the Harvest Line.

38. The Guarantors, and each of them, have breached their obligations under the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation by, among other things,

failing to cure the Events of Default, including, without limitation, by failing to pay to Plaintiff the full amount owed under the Loan Documents, subject to the limitations set forth in the Continuing Guaranty.

39. Plaintiff has performed all covenants, conditions and/or promises required to be performed in accordance with the terms and conditions of the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, except those were prevented, excused, or relieved by the Guarantors.

40. Under the terms of the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, the Guarantors are liable for all costs incurred by Plaintiff in enforcing its rights, including, without limitation, all attorneys' fees and costs and other expenses. Plaintiff has been compelled to employ Sheppard, Mullin, Richter & Hampton LLP to enforce its rights under the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, and Plaintiff has incurred and will continue to incur attorneys' fees in an amount unknown to Plaintiff at this time. Plaintiff is therefore entitled to recover its attorneys' fees and costs and other expenses in connection with this action.

41. As a direct and proximate result of the Guarantors' breaches of the Continuing Guaranty and the Harvest Line Guaranty and Reaffirmation, Plaintiff has sustained, and will continue to sustain, damages according to proof at trial, but in no event are those damages less than the Outstanding Balance. The Guarantors' liability is, however, capped according to the terms of the Continuing Guaranty, as set forth above, plus the separate amounts due and owing in connection with the Harvest Line.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each of the Guarantors, jointly and severally, as follows:

A. For damages in amount to be proven at trial;

B. For pre- and post-judgment interest;

C. For an award of attorneys' fees and other expenses;

D. For costs of suit incurred herein;

   E. For such other amounts to be proven at trial; and

   F. For all such other and further relief as the Court may deem just and proper.

Dated:  November 13, 2024

           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

      By  */s/ Jeannie Kim*
          MICHAEL M. LAUTER
          JEANNIE KIM

          Attorneys for Plaintiff
        U.S. BANK, NATIONAL ASSOCIATION