**EXHIBIT A**

FIFTH AMENDED AND RESTATED CONTINUING GUARANTY

1.    **Obligations Guarantied.**  For consideration, the adequacy and sufficiency of which is acknowledged, the undersigned (individually and collectively, the "Guarantor") unconditionally guaranties and promises (a) to pay to MUFG UNION BANK, N.A., as administrative agent (in such capacity, "Administrative Agent") for the lenders (each, a "Lender" and collectively, the "Lenders") from time to time party to that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019, by and among Administrative Agent, the Lenders and Borrower (as defined below), as the same may be amended from time to time (as the same may be modified, supplemented, amended, amended and restated or replaced from time to time, the "Loan Agreement") on demand, in lawful United States money, all Obligations of (i) MARICOPA ORCHARDS, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, and C & A FARMS, LLC, a California limited liability company (individually and collectively, the "Maricopa Borrower"), (ii) LINCOLN GRANTOR FARMS, LLC, a California limited liability company, CANTUA ORCHARDS, LLC, a California limited liability company, FAVIER RANCH, LLC, a California limited liability company, GRANTLAND FARMS, LLC, a California limited liability company, PRATT ROAD ORCHARD, LLC, a California limited liability company, SELMA FARMS, LLC, a California limited liability company, and WHITESBRIDGE FARMS, LLC, a California limited liability company (individually and collectively, the "Lincoln Borrower"), (iii) PANOCHE PISTACHIOS, LLC, a California limited liability company, 104 PISTACHIOS, LLC, a California limited liability company, DERRICK PISTACHIOS, LLC, a California limited liability company, KAMM PISTACHIOS, LLC, a California limited liability company, and THREE ROCKS PISTACHIOS, LLC, a California limited liability company (individually and collectively, the "Panoche Borrower"), and (iv) SAGEBERRY FARMS, LLC, a California limited liability company (the "Sageberry Borrower", and, with the Maricopa Borrower, the Lincoln Borrower and the Panoche Borrower, individually and collectively, "Borrower"), to Administrative Agent and/or the Lenders and (b) to perform all undertakings of Borrower in connection with the Obligations. "Obligations" is used in its most comprehensive sense and includes any and all debts, liabilities, rental obligations, and other obligations and liabilities of every kind of Borrower to Administrative Agent and/or the Lenders, whether made, incurred or created previously, concurrently or in the future, whether voluntary or involuntary and however arising, whether incurred directly or acquired by Administrative Agent or the Lenders by assignment or succession, whether due or not due, absolute or contingent, liquidated or unliquidated, legal or equitable, whether Borrower is liable individually or jointly or with others, whether incurred before, during or after any bankruptcy, reorganization, insolvency, receivership or similar proceeding ("Insolvency Proceeding"), and whether recovery thereof is or becomes barred by a statute of limitations or is or becomes otherwise unenforceable, together with all expenses of, for and incidental to collection, including reasonable attorneys' fees.  Unless otherwise defined herein, all capitalized terms used herein shall have the respective meanings given to those terms in the Loan Agreement.

2.    **Limitation on Guarantor's Liability.**  Although this Fifth Amended and Restated Continuing Guaranty ("Guaranty") covers all Obligations, Guarantor's liability under this Guaranty for Borrower's Obligations shall not exceed at any one time the sum of the following (the "Guarantied Liability Amount"): (a) One Hundred Fourteen Million Dollars ($114,000,000.00) for Obligations representing principal ("Principal Amount"), (b) all interest, fees and like charges owing and allocable to the Principal Amount as determined by Administrative Agent, (c) all amounts owing to Administrative Agent under any interest rate swap or similar agreement heretofore or hereinafter entered into between Borrower and Administrative Agent, (d) all amounts owing to Administrative Agent under any foreign exchange contract or similar agreement heretofore or hereinafter entered into between Borrower and Administrative Agent, and (e) without allocation in respect of the Principal Amount, all costs, attorneys' fees, and expenses of Administrative Agent and/or the Lenders relating to or arising out of the enforcement of the Obligations and all indemnity liabilities of Guarantor under this Guaranty.  The foregoing limitation applies only to Guarantor's liability under this particular Guaranty.  Unless Administrative Agent otherwise agrees in writing, every other guaranty of any Obligations previously, concurrently, or hereafter given to Administrative Agent and/or the Lenders (or any of them) by Guarantor is independent of this Guaranty and of every other such guaranty.  Without notice to Guarantor, the Lenders may permit the Obligations to exceed the Principal Amount and may apply or reapply any amounts received in respect of the

Obligations from any source other than from Guarantor to that portion of the Obligations not included within the Guarantied Liability Amount.

3.    **Continuing Nature/Revocation/Reinstatement.**  This Guaranty is in addition to any other guaranties of the Obligations, is continuing and covers all Obligations, including those arising under successive transactions which continue or increase the Obligations from time to time, renew all or part of the Obligations after they have been satisfied, or create new Obligations.  Revocation by one or more signers of this Guaranty or any other guarantors of the Obligations shall not (a) affect the obligations under this Guaranty of a non-revoking Guarantor, (b) apply to Obligations outstanding when Administrative Agent receives written notice of revocation, or to any extensions, renewals, readvances, modifications, amendments or replacements of such Obligations, or (c) apply to Obligations, arising after Administrative Agent receives such notice of revocation, which are created pursuant to a commitment existing at the time of the revocation, whether or not there exists an unsatisfied condition to such commitment or Administrative Agent or any of the Lenders has another defense to its performance.  All of Administrative Agent's rights pursuant to this Guaranty continue with respect to amounts previously paid to Administrative Agent or the Lenders on account of any Obligations which are thereafter restored or returned by Administrative Agent or any Lender, whether in an Insolvency Proceeding of any Borrower or for any other reason, all as though such amounts had not been paid to Administrative Agent or such Lender; and Guarantor's liability under this Guaranty (and all its terms and provisions) shall be reinstated and revived, notwithstanding any surrender or cancellation of this Guaranty.  Administrative Agent, at its sole discretion, may determine whether any amount paid to it or any Lender must be restored or returned; provided, however, that if Administrative Agent elects to contest any claim for return or restoration, Guarantor agrees to indemnify and hold Administrative Agent and each Lender harmless from and against all costs and expenses, including reasonable attorneys' fees, expended or incurred by such entity in connection with such contest.  If any Insolvency Proceeding is commenced by Borrower or Guarantor or any other guarantor, or if any Insolvency Proceeding is commenced against any Borrower or Guarantor or any other guarantor and is not dismissed within sixty (60) calendar days, at Administrative Agent's election, Guarantor's obligations under this Guaranty shall immediately and without notice or demand become due and payable, whether or not then otherwise due and payable.

4.    **Authorization.**  Guarantor authorizes Administrative Agent and the Lenders, without notice and without affecting Guarantor's liability under this Guaranty, from time to time, whether before or after any revocation of this Guaranty, to (a) renew, compromise, extend, accelerate, release, subordinate, waive, amend and restate, or otherwise amend or change, the interest rate, time or place for payment or any other terms of all or any part of the Obligations; (b) accept delinquent or partial payments on the Obligations; (c) take or not take security or other credit support for this Guaranty or for all or any part of the Obligations, and exchange, enforce, waive, release, subordinate, fail to enforce or perfect, sell, or otherwise dispose of any such security or credit support; (d) apply proceeds of any such security or credit support and direct the order or manner of its sale or enforcement as Administrative Agent, at its sole discretion, may determine; and (e) release or substitute Borrower or any guarantor or other person or entity liable on the Obligations.

5.    **Waivers.**  To the maximum extent permitted by law, Guarantor waives (a) all rights to require Administrative Agent or the Lenders to proceed against Borrower, or any other guarantor, or proceed against, enforce or exhaust any security for the Obligations or to marshal assets or to pursue any other remedy in Administrative Agent's or any Lender's power whatsoever; (b) all defenses arising by reason of any disability or other defense of any Borrower, the cessation for any reason of the liability of any Borrower, any defense that any other indemnity, guaranty or security was to be obtained, any claim that Administrative Agent or any Lender has made Guarantor's obligations more burdensome or more burdensome than any Borrower's obligations, and the use of any proceeds of the Obligations other than as intended or understood by the Lenders or Guarantor; (c) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and of the existence or creation of new or additional Obligations, and all other notices  or demands to which Guarantor might otherwise be entitled; (d) all conditions precedent to the effectiveness of this Guaranty; (e) all rights to file a claim in connection with the Obligations in an Insolvency Proceeding filed by or against any Borrower; (f) all rights to require Administrative Agent or the Lenders to

enforce any of their remedies; and (g) until the Obligations are satisfied or fully paid with such payment not subject to return: (i) all rights of subrogation, contribution, indemnification or reimbursement, (ii) all rights of recourse to any assets or property of any Borrower or to any collateral or credit support for the Obligations, (iii) all rights to participate in or benefit from any security or credit support Administrative Agent or the Lenders may have or acquire,  and (iv) all rights, remedies and defenses Guarantor may have or acquire against any Borrower.  Guarantor understands that if Administrative Agent forecloses by trustee's sale on a deed of trust securing any of the Obligations, Guarantor would then have a defense preventing Administrative Agent and the Lenders from thereafter enforcing Guarantor's liability for the unpaid balance of the secured Obligations.  This defense arises because the trustee's sale would eliminate Guarantor's right of subrogation, and therefore Guarantor would be unable to obtain reimbursement from Borrower.  Guarantor specifically waives this defense and all rights and defenses that Guarantor may have because the Obligations are secured by real property.  This means, among other things: (a) Administrative Agent and the Lenders may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by any Borrower; and (b) if Administrative Agent forecloses on any real property collateral pledged by any Borrower: (i) the amount of the Obligations may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) Administrative Agent and/or the Lenders may collect from Guarantor even if Administrative Agent, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure or similar laws in other states.

6.      **Guarantor to Keep Informed.**  Guarantor warrants having established with Borrower adequate means of obtaining, on an ongoing basis, such information as Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Obligations.  Guarantor assumes sole, continuing responsibility for obtaining such information from sources other than from Administrative Agent.  Neither Administrative Agent nor any of the Lenders has any duty to provide any information to Guarantor until Administrative Agent receives Guarantor's written request for specific information in the possession of Administrative Agent or a Lender and Borrower have authorized Administrative Agent or such Lender to disclose such information to Guarantor.

7.      **Subordination.**  All obligations of Borrower to Guarantor which presently or in the future may exist ("Guarantor's Claims") are hereby subordinated to the Obligations.  At Administrative Agent's request, Guarantor's Claims will be enforced and performance thereon received by Guarantor only as a trustee for Administrative Agent, and Guarantor will promptly pay over to Administrative Agent all proceeds recovered for application to the Obligations without reducing or affecting Guarantor's liability under other provisions of this Guaranty.

8.      **Security.**  To secure Guarantor's obligations under this Guaranty, other than for payment of Obligations which are subject to the disclosure requirements of the United States Truth in Lending Act, Guarantor grants Administrative Agent, for the benefit of the Lenders, a security interest in all moneys, general and special deposits, instruments and other property of Guarantor at any time maintained with or held by Administrative Agent or any of the Lenders, and all proceeds of the foregoing.

9.      **Authorization.**  Where any Borrower is a corporation, partnership or other entity, Administrative Agent need not inquire into or verify the powers of such Borrower or authority of those acting or purporting to act on behalf of such Borrower, and this Guaranty shall be enforceable with respect to any Obligations the Lenders grant or create in reliance on the purported exercise of such powers or authority.

10.     **Assignments.**  Without notice to Guarantor, any Lender may assign its respective rights in the Obligations and this Guaranty, in whole or in part, and may disclose to any prospective or actual purchaser of all or part of the Obligations any and all information such Lender has or acquires concerning Guarantor, this Guaranty and any security for this Guaranty.

**11.    Counsel Fees and Costs.**  The prevailing party shall be entitled to attorneys' fees (including a reasonable allocation for Administrative Agent's internal counsel) and all other costs and expenses which it may incur in connection with the enforcement or preservation of its rights under, or defense of, this Guaranty or in connection with any other dispute or proceeding relating to this Guaranty, whether or not incurred in any Insolvency Proceeding, arbitration, litigation or other proceeding.

**12.    Married Guarantors.**  By executing this Guaranty, a Guarantor who is married agrees that recourse may be had against his or her separate and community property for all his or her obligations under this Guaranty.

**13.    Multiple Guarantors/Borrowers.**  When there is more than one Borrower named herein or when this Guaranty is executed by more than one Guarantor, then the words "Borrower" and "Guarantor", respectively, shall mean all and any one or more of them, and their respective successors and assigns, including debtors-in-possession and bankruptcy trustees; words used herein in the singular shall be considered to have been used in the plural where the context and construction so requires in order to refer to more than one Borrower or Guarantor, as the case may be.

**14.    Integration/Severability/Amendments.**    This Guaranty is intended by Guarantor and Administrative Agent as the complete, final expression of their agreement concerning its subject matter. It supersedes all prior understandings or agreements with respect thereto and may be changed only by a writing signed by Guarantor and Administrative Agent.  No course of dealing, or parole or extrinsic evidence shall be used to modify or supplement the express terms of this Guaranty.  If any provision of this Guaranty is found to be illegal, invalid or unenforceable, such provision shall be enforced to the maximum extent permitted, but if fully unenforceable, such provision shall be severable, and this Guaranty shall be construed as if such provision had never been a part of this Guaranty, and the remaining provisions shall continue in full force and effect.

**15.    Joint and Several.**  If more than one Guarantor signs this Guaranty, the obligations of each Guarantor under this Guaranty are joint and several, and independent of the Obligations and of the obligations of any other person or entity.  A separate action or actions may be brought and prosecuted against any one or more guarantors, whether action is brought against Borrower or other guarantors of the Obligations, and whether Borrower or others are joined in any such action.

**16.    Notice.**  Any notice, including notice of revocation, given by any party under this Guaranty shall be effective only upon its receipt by the other party and only if (a) given in writing and (b) personally delivered or sent by United States mail, postage prepaid, and addressed to Administrative Agent or Guarantor at their respective addresses for notices indicated below.  Guarantor and Administrative Agent may change the place to which notices, requests, and other communications are to be sent to them by giving written notice of such change to the other.

**17.    California Law.**  This Guaranty shall be governed by and construed according to the laws of California, and, except as provided in any alternative dispute resolution agreement executed between Guarantor and Administrative Agent, Guarantor submits to the non-exclusive jurisdiction of the state or federal courts in said state.

**18.    Dispute Resolution.**  This Guaranty hereby incorporates any alternative dispute resolution agreement previously, concurrently or hereafter executed between Guarantor and Administrative Agent.

**19.    Reporting Requirements.**    Guarantor shall annually furnish to Administrative Agent (i) a personal financial statement within one hundred eighty (180) days following the close of each Fiscal Year, and (ii) its federal income tax return (including all K-1s and other schedules) as soon as available and in no event later than fifteen (15) days after filing.

20.    **Counterparts.**  This Guaranty may be executed in one or more counterparts, each of which, when so executed, shall be deemed an original, and all of which, taken together, shall be deemed to constitute but one and the same instrument.

21.    **Amendment and Restatement.**  As of the date hereof, this Guaranty amends and restates in full that certain (i) Fourth Amended and Restated Continuing Guaranty dated as of December 1, 2017, executed by Darius Assemi, the Amended and Restated Darius Assemi Revocable Trust, Farid Assemi, the Amended and Restated Farid Assemi Revocable Trust, the Farid Assemi 1997 Ranch Trust, Farshid Assemi, the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, and the Farshid Assemi 1997 Ranch Trust in connection with the Maricopa Borrower, (ii) Continuing Guaranty dated as of February 20, 2018, executed Darius Assemi, the Amended and Restated Darius Assemi Revocable Trust, Farid Assemi, the Amended and Restated Farid Assemi Revocable Trust, the Farid Assemi 1997 Ranch Trust, Farshid Assemi, the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust, and the Farshid Assemi 1997 Ranch Trust in connection with the Lincoln Borrower, (iii) Continuing Guaranty dated as of November 25, 2014, executed by Darius Assemi, the Amended and Restated Darius Assemi Revocable Trust, Farid Assemi, Farshid Assemi, The Farid Assemi 2010 Grantor Trust dated December 30, 2010, and The Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010, in connection with the Panoche Borrower; and (iv) Continuing Guaranty dated as of September 30, 2014, executed by Darius Assemi, the Amended and Restated Darius Assemi Revocable Trust, Farid Assemi, Farshid Assemi, The Farid Assemi 2010 Grantor Trust dated December 30, 2010, and The Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010, in favor of the Sageberry Borrower, each in favor of Bank, as the same may have been amended from time to time.

*[Remainder of page intentionally left blank]*

Executed as of March 25, 2019.  Guarantor acknowledges having received a copy of this Guaranty and having made each waiver contained in this Guaranty with full knowledge of its consequences.

ADMINISTRATIVE AGENT:

**MUFG UNION BANK, N.A.**

By: _____
Name:  Scott Lisle
Title:    Director

GUARANTORS:

_____
DARIUS ASSEMI, an individual

_____
FARID ASSEMI, an individual

_____
FARSHID ASSEMI, an individual

_____
DARIUS ASSEMI, as trustee of the Amended and Restated Darius Assemi Revocable Trust

_____
FARID ASSEMI, as trustee of the Amended and Restated Farid Assemi Revocable Trust

_____
FARSHID ASSEMI, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
SONIA ROSEMARY ASSEMI, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
FARID ASSEMI, as trustee of the Farshid Assemi 1997 Ranch Trust

_____
FARSHID ASSEMI, as co-trustee of the Farid Assemi 1997 Ranch Trust

_____
BABAK SHAKOORY, as co-trustee of the Farid Assemi 1997 Ranch Trust

S 6

**KEVIN ASSEMI**, as trustee of The Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010

**NEEMA ASSEMI**, as trustee of The Farid Assemi 2010 Grantor Trust dated December 30, 2010

Address for notices to Administrative Agent:

MUFG Union Bank, N.A.
National Agribusiness Group
7108 N. Fresno Street, Suite 200
Fresno, CA  93720
Attn:  Scott Lisle

with a copy to:

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4106
Attn:  Juliette M. Ebert, Esq.

Address for notices to Guarantors:

Darius Assemi
7297 N. Geraldine
Fresno, CA 93711

Farid Assemi
1699 W. Fir
Fresno, CA 93711

Farshid Assemi
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Amended and Restated Darius Assemi Revocable
Trust
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Farid Assemi Revocable Trust
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Farshid Assemi and Sonia Rosemary Assemi
Revocable Trust
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Farshid Assemi 1997 Ranch Trust
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Farid Assemi 1997 Ranch Trust
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

The Farshid and Sonia Assemi 2010 Grantor
Trust dated December 30, 2010
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

The Farid Assemi 2010 Grantor Trust dated
December 30, 2010
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

**EXHIBIT B**

## NINTH AMENDED AND RESTATED REVOLVING NOTE

$150,000,000.00

December 13, 2022
Fresno, California

   FOR VALUE RECEIVED, MARICOPA ORCHARDS, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, C & A FARMS, LLC, a California limited liability company, LINCOLN GRANTOR FARMS, LLC, a California limited liability company, CANTUA ORCHARDS, LLC, a California limited liability company, FAVIER RANCH, LLC, a California limited liability company, GRANTLAND FARMS, LLC, a California limited liability company, WHITESBRIDGE FARMS, LLC, a California limited liability company, PANOCHE PISTACHIOS, LLC, a California limited liability company, SAGEBERRY FARMS, LLC, a California limited liability company, ACAP FARMS, LLC, a California limited liability company, A&H INVESTMENTS, LLC, a California limited liability company, ASHLAN & HAYES FARMS, LLC, a California limited liability company, BEAR FLAG FARMS, LLC, a California limited liability company, COPPER AVENUE INVESTMENTS, LLC, a California limited liability company, WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company, GRANVILLE FARMS, LLC, a California limited liability company, FNF FARMS, LLC, a California limited liability company, KAMM SOUTH, LLC, a California limited liability company, GRADON FARMS, LLC, a California limited liability company, MANNING AVENUE PISTACHIOS, LLC, a California limited liability company, WINSTON FARMS, LLC, a California limited liability company, FFGT FARMS, LLC, a California limited liability company, ADAMS GRANTOR LAND, LLC, a California limited liability company, and ASSEMI AND SONS, INC., a California corporation (each, individually and collectively, "Borrower") promises to pay to the order of MUFG UNION BANK, N.A., or any successor thereto (the "Lender"), the principal amount of One Hundred Fifty Million and No/100 Dollars ($150,000,000.00), or such lesser amount as shall equal the then aggregate outstanding Revolving Loans made by the Lender to the undersigned under the Loan Agreement referred to below, payable as hereinafter set forth.  The undersigned promises to pay interest on the principal amount hereof remaining unpaid from time to time from the date hereof until the date of payment in full, payable as hereinafter set forth.

   Reference is made to the Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended, extended, renewed, supplemented or otherwise modified from time to time, the "Loan Agreement"), between Borrower, Lender, the other "Lenders" named therein and MUFG Union Bank, N.A., as Administrative Agent.  Capitalized terms used and not otherwise defined herein shall have the meanings given those terms in the Loan Agreement.  This Ninth Amended and Restated Revolving Note ("Note") is one of the "Revolving Notes" referred to in the Loan Agreement, and any holder hereof is entitled to all of the rights, remedies, benefits and privileges provided for in the Loan Agreement as originally executed or as it may from time to time be supplemented, modified or amended.  The Loan Agreement, among other things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events upon the terms and conditions therein specified.

   The principal indebtedness evidenced by this Note shall be payable as provided in the Loan Agreement and in any event on the Maturity Date.

   Interest shall be payable on the outstanding daily unpaid principal amount of the Revolving Loan from the date thereof until payment in full and shall accrue and be payable at the rates and on the dates set forth in the Loan Agreement both before and after default and before and after

-1-

maturity and judgment, with interest on overdue principal and interest upon the occurrence and during the continuance of an Event of Default to accrue at the rate set forth in <u>Section 2.9(b)</u> of the Loan Agreement, to the fullest extent permitted by Applicable Law.

Each payment hereunder shall be made to Administrative Agent at Administrative Agent's office in immediately available funds not later than 11:00 a.m. (California time) on the day of payment (which must be a Business Day). All payments received after 11:00 a.m. (California time) on any particular Business Day shall be deemed received on the next succeeding Business Day. All payments shall be made in lawful money of the United States of America.

Administrative Agent shall use its best efforts to keep a record of payments of principal and interest received by it with respect to this Note, and such record shall be presumptive evidence of the amounts owing under this Note absent manifest error.

The undersigned hereby promises to pay all costs and expenses of any rightful holder hereof incurred in collecting the undersigned's obligations hereunder or in enforcing or attempting to enforce any of such holder's rights hereunder, including reasonable attorneys' fees and disbursements, whether or not an action is filed in connection therewith, as set forth in <u>Section 11.2</u> of the Loan Agreement.

The undersigned hereby waives presentment, demand for payment, dishonor, notice of dishonor, protest, notice of protest and any other notice or formality, to the fullest extent permitted by Applicable Law.

This Note may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same Note.

THIS NOTE SHALL BE DELIVERED TO AND ACCEPTED BY THE LENDER IN THE STATE OF CALIFORNIA, AND SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LOCAL LAWS THEREOF.

This Note amends, restates, supersedes and is given in substitution for the Eighth Amended and Restated Revolving Note dated October 28, 2021, in the stated principal amount of $110,000,000.00, made by Borrower in favor of Lender (the "<u>Prior Note</u>"), but does not constitute a novation, extinguishment or termination of the obligations evidenced thereby, and all collateral securing or supporting the Prior Note shall continue to secure and support this Note.

*[Signatures of Borrower on the following pages]*

Borrower:

**MARICOPA ORCHARDS, LLC,**
a California limited liability company

By: _____
Name: Farid Assemi
Title:   General Manager

Borrower:

**ACDF, LLC,**
a California limited liability company

By:
Name: Farid Assemi
Title:   General Manager

Borrower:

**C & X FARMS, LLC,**
a California limited liability company

By:
Name: Farid Assemi
Title:   General Manager

Borrower:

**LINCOLN GRANTOR FARMS, LLC,**
a California limited liability company

By:     _____
Name:  Neema Assemi
Title:   General Manager

Borrower:

**CANTUA ORCHARDS, LLC,**
a California limited liability company

By: _____
    Farid Assemi, as trustee of the
    Farshid Assemi 1997 Ranch Trust,
    General Manager

By: _____
    Farshid Assemi, as co-trustee of the
    Farid Assemi 1997 Ranch Trust,
    General Manager

By: _____
    Neema Eliot Assemi, as co-trustee of the
    Farid Assemi 1997 Ranch Trust,
    General Manager

By: _____
    Farid Assemi, as trustee of the
    Farid Assemi Revocable Trust,
    General Manager

By: _____
    Farshid Assemi, as co-trustee of the
    Amended and Restated Farshid Assemi and
    Sonia Rosemary Assemi Revocable Trust,
    General Manager

By: _____
    Sonia Rosemary Assemi, as co-trustee of the
    Amended and Restated Farshid Assemi and
    Sonia Rosemary Assemi Revocable Trust,
    General Manager

By: _____
    Darius Assemi, as trustee of the
    Darius Assemi Revocable Trust,
    General Manager

Borrower:

**FAVIER RANCH, LLC,**
a California limited liability company

By: _____
     Nader Assemi, Manager

By: _____
     Neema Assemi, Manager

By: _____
     Darius Assemi, Manager

Borrower:

**GRANTLAND FARMS, LLC,**
a California limited liability company

By: _____
    Nader Assemi, General Manager

By: _____
    Neema Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Borrower:

**WHITESBRIDGE FARMS, LLC,**
a California limited liability company

By: _____
    Nader Assemi, Manager

By: _____
    Neema Assemi, Manager

By: _____
    Darius Assemi, Manager

Borrower:

**PANOCHE PISTACHIOS, LLC,**
a California limited liability company

By: _____
    Neema Assemi, General Manager

By: _____
    Nader Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Borrower:

**SAGEBERRY FARMS, LLC,**
a California limited liability company

By: _____
      Neema Assemi, General Manager

Borrower:

**ACAP FARMS, LLC**,
a California limited liability company

By: _____
    Farid Assemi, General Manager

By: _____
    Farshid Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Borrower:

A&H INVESTMENTS, LLC,
a California limited liability company

By: _____
    Farid Assemi, General Manager

By: _____
    Farshid Assemi, General Manager

Borrower:

**ASHLAN & HAYES FARMS, LLC,**
a California limited liability company

By: _____
   Neema Assemi, General Manager

By: _____
   Darius Assemi, General Manager

Borrower:

**BEAR FLAG FARMS, LLC,**
a California limited liability company

By: _____
      Neema Assemi, General Manager

By: _____
      Darius Assemi, General Manager

Borrower:

**COPPER AVENUE INVESTMENTS, LLC,**
a California limited liability company

By: _____
    Farid Assemi, General Manager

By: _____
    Farshid Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Borrower:

**WILLOW AVENUE INVESTMENTS, LLC,**
a California limited liability company

By: _____
    Neema Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Case 1:24-cv-01393-KES-SKO   Document 1-1   Filed 11/13/24   Page 29 of 149

**Borrower:**

**GRANVILLE FARMS, LLC,**
a California limited liability company

By: _____
     Farid Assemi,  General Manager

SMRH:4878-6691-4092          S-17          2022 Note
0A22-152623

**Borrower:**

**FNF FARMS, LLC**
a California limited liability company

By: _____
        Farid Assemi, General Manager

**Borrower:**

**KAMM SOUTH, LLC,**
a California limited liability company

By: _____
        Farid Assemi,  General Manager

Borrower:

**GRADON FARMS, LLC,**
a California limited liability company

By: _____
     Neema Assemi, Manager

**Borrower:**

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____
Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Member

By: _____
Farshid Assemi, Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust, Member

By: _____
Nada L .Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Member

By: _____
Donald E. Schramm, Trustee of the
Donald E. Schramm and Nada L. Schramm
Revocable Trust, Member

By: _____
Catherine S. Thomsen, Trustee of the Thomsen
Family Trust, Member

By: _____
Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Member

**Borrower:**

**WINSTON FARMS, LLC,**
a California limited liability company

By: _____
        Neema Assemi, Manager

S-22

Borrower:

**FFGT FARMS, LLC,**
a California limited liability company

By: _____
Neema Assemi, Manager

Borrower:

**ADAMS GRANTOR LAND, LLC,**
a California limited liability company

By:  _____
~~Farid~~ Assemi, General Manager
*Farshid*

**Borrower:**

**ASSEMI AND SONS, INC.,**
a California corporation

By: _____
      Farid Assemi, President

By: _____
      John Bezmalinovic, Secretary

**EXHIBIT C**

HARVEST LINE PROMISSORY NOTE

$11,580,840.00                                                      October 30, 2024
                                                                   Fresno, California

FOR VALUE RECEIVED, MARICOPA ORCHARDS, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, C & A FARMS, LLC, a California limited liability company, LINCOLN GRANTOR FARMS, LLC, a California limited liability company, CANTUA ORCHARDS, LLC, a California limited liability company, FAVIER RANCH, LLC, a California limited liability company, GRANTLAND FARMS, LLC, a California limited liability company, WHITESBRIDGE FARMS, LLC, a California limited liability company, PANOCHE PISTACHIOS, LLC, a California limited liability company, SAGEBERRY FARMS, LLC, a California limited liability company, ACAP FARMS, LLC, a California limited liability company, ASHLAN & HAYES FARMS, LLC, a California limited liability company, BEAR FLAG FARMS, LLC, a California limited liability company, COPPER AVENUE INVESTMENTS, LLC, a California limited liability company, WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company, A&H INVESTMENTS, LLC, a California limited liability company, GRANVILLE FARMS, LLC, a California limited liability company, FNF FARMS, LLC, a California limited liability company, KAMM SOUTH, LLC, a California limited liability company, GRADON FARMS, LLC, a California limited liability company, MANNING AVENUE PISTACHIOS, LLC, a California limited liability company, WINSTON FARMS, LLC, a California limited liability company, FFGT FARMS, LLC, a California limited liability company, ADAMS GRANTOR LAND, LLC, a California limited liability company, and ASSEMI AND SONS, INC., a California corporation (each, individually and collectively, "**Borrower**") promises to pay to the order of U.S. BANK NATIONAL ASSOCIATION (as successor in interest to MUFG Union Bank, N.A., "**U.S. Bank**"), or any successor thereto (the "**Lender**"), the principal amount of Eleven Million Five Hundred Eighty Thousand Eight Hundred Forty and No/100 Dollars ($11,580,840.00), or such lesser amount as shall equal the then aggregate outstanding Harvest Line of Credit Loans made by the Lender to the undersigned under the Loan Agreement referred to below, payable as hereinafter set forth. The undersigned promises to pay interest on the principal amount hereof remaining unpaid from time to time from the date hereof until the date of payment in full, payable as hereinafter set forth.

Reference is made to the Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended, extended, renewed, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), between Borrower, Lender, the other "Lenders" named therein and U.S. Bank National Association, successor-in-interest to MUFG Union Bank, N.A., as Administrative Agent ("**Administrative Agent**"). Reference is also made to that certain Fifth Amendment to Second Amended & Restated Loan and Security Agreement (the "**Fifth Amendment**"). Capitalized terms used and not otherwise defined herein shall have the meanings given those terms in the Loan Agreement as amended by the Fifth Amendment. This Harvest Line Promissory Note ("**Note**") is one of the "Harvest Line Notes" referred to in the Loan Agreement, and any holder hereof is entitled to all of the rights, remedies, benefits and privileges provided for in the Loan Agreement as originally executed or as it may from time to time be supplemented, modified or amended. The Loan Agreement, among other things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events upon the terms and conditions therein specified.

The principal indebtedness evidenced by this Note shall be payable as provided in the Loan Agreement and in any event on the Maturity Date.

Interest shall be payable on the outstanding daily unpaid principal amount of the Harvest Line of Credit (as defined in the Fifth Amendment) from the date thereof until payment in full and shall accrue and be payable at the rate set forth in Section 2.10.4 the Loan Agreement and on the dates set forth therein both before and after default and before and after maturity and judgment. Interest due on overdue principal and interest upon the occurrence and during the continuance of an Event of Default shall accrue at the rate set forth in Section 2.10.4 of the Loan Agreement, to the fullest extent permitted by Applicable Law.

Each payment hereunder shall be made to Administrative Agent at Administrative Agent's office in immediately available funds not later than 2:00 p.m. (California time) on the day of payment (which must be a Business Day).  All payments received after 2:00 p.m. (California time) on any particular Business Day shall be deemed received on the next succeeding Business Day.  All payments shall be made in lawful money of the United States of America.

Administrative Agent shall use its best efforts to keep a record of payments of principal and interest received by it with respect to this Note, and such record shall be presumptive evidence of the amounts owing under this Note absent manifest error.

The undersigned hereby promises to pay all costs and expenses of any rightful holder hereof incurred in collecting the undersigned's obligations hereunder or in enforcing or attempting to enforce any of such holder's rights hereunder, including reasonable attorneys' fees and disbursements, whether or not an action is filed in connection therewith, as set forth in Section 11.2 of the Loan Agreement.

The undersigned hereby waives presentment, demand for payment, dishonor, notice of dishonor, protest, notice of protest and any other notice or formality, to the fullest extent permitted by Applicable Law.

This Note may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all of which, taken together, shall constitute one and the same Note.

THIS NOTE SHALL BE DELIVERED TO AND ACCEPTED BY THE LENDER IN THE STATE OF CALIFORNIA AND SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LOCAL LAWS THEREOF.

*[Signatures of Borrower on the following pages]*

Borrower:

**MARICOPA ORCHARDS, LLC,**
a California limited liability company

By: _____
Farshid Assemi
General Manager

Borrower:

**ACDF, LLC**,
a California limited liability company

By: _____
        Farshid Assemi
        General Manager

Borrower:

**C & A FARMS, LLC**,
a California limited liability company

By: _____
Farshid Assemi
General Manager

Borrower:

**LINCOLN GRANTOR FARMS, LLC,**
a California limited liability company

By: _____
      Neema Assemi
      General Manager

Borrower:

**CANTUA ORCHARDS, LLC,**
a California limited liability company

By: _____
         Farid Assemi, Manager

By: _____
         Farshid Assemi, Manager

By: _____
         Darius Assemi, Manager

S-5

Borrower:

**CANTUA ORCHARDS, LLC**,
a California limited liability company

By:  _____
     Farid Assemi, Manager

By:  _____
     Farshid Assemi, Manager

By:  _____
     Darius Assemi, Manager

Borrower:

**FAVIER RANCH, LLC**,
a California limited liability company

By: _____
Nader Assemi, Manager

By: _____
Neema Assemi, Manager

By: _____
Darius Assemi, Manager

Borrower:

**GRANTLAND FARMS, LLC**,
a California limited liability company

By: _____

Nader Assemi, General Manager

By: _____

Neema Assemi, General Manager

By: _____

Darius Assemi, General Manager

Borrower:

**WHITESBRIDGE FARMS, LLC**,
a California limited liability company

By: _____
Nader Assemi, Manager

By: _____
Neema Assemi, Manager

By: _____
Darius Assemi, Manager

Borrower:

**PANOCHE PISTACHIOS, LLC**,
a California limited liability company

By: _____
    Neema Assemi, General Manager

By: _____
    Nader Assemi, General Manager

By: _____
    Darius Assemi, General Manager

Borrower:

**SAGEBERRY FARMS, LLC**,
a California limited liability company

By:  _____
        Neema Assemi, General Manager

Borrower:

**ACAP FARMS, LLC,**
a California limited liability company

By: _____
        Farid Assemi, Manager

By: _____
        Farshid Assemi, Manager

By: _____
        Darius Assemi, Manager

S-11

Borrower:

**ACAP FARMS, LLC**,
a California limited liability company

By: _____
     Farid Assemi, Manager

By: _____
     Farshid Assemi, Manager

By: _____
     Darius Assemi, Manager

Borrower:

**ASHLAN & HAYES FARMS, LLC**,
a California limited liability company

By:  _____
     Neema Assemi, General Manager


By:  _____
     Darius Assemi, General Manager

Borrower:

**BEAR FLAG FARMS, LLC,**
a California limited liability company

By:   _____
          Neema Assemi, General Manager


By:   _____
          Darius Assemi, General Manager

Borrower:

**COPPER AVENUE INVESTMENTS, LLC,**
a California limited liability company

By: _____
Farid Assemi, General Manager


By: _____
Farshid Assemi, General Manager


By: _____
Darius Assemi, General Manager

S-14

Borrower:

**COPPER AVENUE INVESTMENTS, LLC**,
a California limited liability company

By: _____
       Farid Assemi, General Manager

By: _____
       Farshid Assemi, General Manager

By: _____
       Darius Assemi, General Manager

Borrower:

**WILLOW AVENUE INVESTMENTS, LLC**,
a California limited liability company

By:  _____
Neema Assemi, General Manager


By:  _____
Darius Assemi, General Manager

Borrower:

**A&H INVESTMENTS, LLC,**
a California limited liability company

By: _____
         Farid Assemi, General Manager


By: _____
         Farshid Assemi, General Manager

Borrower:

**A&H INVESTMENTS, LLC**,
a California limited liability company

By: _____
     Farid Assemi, General Manager


By: _____
     Farshid Assemi, General Manager

**Borrower:**

**GRANVILLE FARMS, LLC**,
a California limited liability company

By:   _____

Farshid Assemi, Manager

**Borrower:**

**FNF FARMS, LLC**,
a California limited liability company

By: _____
     Farshid Assemi, Manager

**Borrower:**

**KAMM SOUTH, LLC**,
a California limited liability company

By: _____
    Farshid Assemi, General Manager

**Borrower:**

**GRADON FARMS, LLC**,
a California limited liability company

By:   _____
        Neema Assemi, Manager

Borrower:

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____
Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Member

By: _____
Farshid Assemi, Co-Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Neema Assemi, Co-Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust, Member

By: _____
Nada L .Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Member

By: _____
Donald E. Schramm, Trustee of the
Donald E. Schramm and Nada L. Schramm
Revocable Trust, Member

By: _____
Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Member

**Borrower:**

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____
    Farid Assemi, Trustee of the Farshid Assemi
    1997 Ranch Trust, Member

By: _____
    Farshid Assemi, Co-Trustee of the Farid Assemi
    1997 Ranch Trust, Member

By: _____
    Neema Assemi, Co-Trustee of the Farid Assemi
    1997 Ranch Trust, Member

By: _____
    Darius Assemi, Trustee of the Amended and
    Restated Darius Assemi Revocable Trust, Member

By: _____
    Nada L .Schramm, Trustee of the Donald E.
    Schramm and Nada L. Schramm Revocable
    Trust, Member

By: _____
    Donald E. Schramm, Trustee of the
    Donald E. Schramm and Nada L. Schramm
    Revocable Trust, Member

By: _____
    Keith A. Thomsen, Trustee of the Thomsen
    Family Trust, Member

**Borrower:**

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____
Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Member

By: _____
Farshid Assemi, Co-Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Neema Assemi, Co-Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust, Member

By: _____
Nada L .Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Member

By: _____
Donald E. Schramm, Trustee of the
Donald E. Schramm and Nada L. Schramm
Revocable Trust, Member

By: _____
Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Member

**Borrower:**

**WINSTON FARMS, LLC**,
a California limited liability company

By: _____
        Neema Assemi, Manager

**Borrower:**

**FFGT FARMS, LLC**,
a California limited liability company

By: _____
        Neema Assemi, Manager

**Borrower:**

**ADAMS GRANTOR LAND, LLC**,
a California limited liability company

By: _____

Farshid Assemi, General Manager

**Borrower:**

**ASSEMI AND SONS, INC.,**
a California corporation

By:  _____
Farshid Assemi, Senior Vice President

By:  _____
Jason Hollrah, Chief Financial Officer

**EXHIBIT D**

**FIFTH AMENDMENT TO**
**SECOND AMENDED AND RESTATED LOAN AND SECURITY AGREEMENT**

This FIFTH AMENDMENT TO SECOND AMENDED AND RESTATED LOAN AND SECURITY AGREEMENT (this "**Agreement**") is entered into as of October 30, 2024, by and among MARICOPA ORCHARDS, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, C & A FARMS, LLC, a California limited liability company, LINCOLN GRANTOR FARMS, LLC, a California limited liability company, CANTUA ORCHARDS, LLC, a California limited liability company, FAVIER RANCH, LLC, a California limited liability company, GRANTLAND FARMS, LLC, a California limited liability company, WHITESBRIDGE FARMS, LLC, a California limited liability company, PANOCHE PISTACHIOS, LLC, a California limited liability company, SAGEBERRY FARMS, LLC, a California limited liability company, ACAP FARMS, LLC, a California limited liability company, ASHLAN & HAYES FARMS, LLC, a California limited liability company, BEAR FLAG FARMS, LLC, a California limited liability company, COPPER AVENUE INVESTMENTS, LLC, a California limited liability company, WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company, A&H INVESTMENTS, LLC, a California limited liability company, GRANVILLE FARMS, LLC, a California limited liability company, FNF FARMS, LLC, a California limited liability company, KAMM SOUTH, LLC, a California limited liability company, GRADON FARMS, LLC, a California limited liability company, MANNING AVENUE PISTACHIOS, LLC, a California limited liability company, WINSTON FARMS, LLC, a California limited liability company, FFGT FARMS, LLC, a California limited liability company, ADAMS GRANTOR LAND, LLC, a California limited liability company, and ASSEMI AND SONS, INC., a California corporation (individually and collectively, "**Borrower**"), the LENDERS (each, a "**Lender**" and collectively, the "**Lenders**") party to the Loan Agreement (defined below), and U.S. BANK NATIONAL ASSOCIATION, successor in interest to MUFG Union Bank, N.A., or any successor thereto, as Administrative Agent for the Lenders (in such capacity, the "**Administrative Agent**"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Loan Agreement.

**RECITALS**

WHEREAS Borrower is currently indebted to the Lenders pursuant to the terms of that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended from time to time, the "**Loan Agreement**"). Unless otherwise defined in this Agreement, capitalized terms used herein shall have the definitions set forth for them in the Loan Agreement.

WHEREAS certain Events of Default occurred under the Loan Agreement as described in those certain notices of events of default and reservation of rights letters delivered by the Administrative Agent to the Borrowers on the following dates: August 8, 2023; November 9, 2023; January 25, 2024; February 6, 2024; and June 3, 2024 (together, the "**Prior Default Letters**"), which provided Borrower with notice of the occurrence of several Events of Default under the Loan Agreement (the "**Outstanding Events of Default**").

WHEREAS as of the date of this Agreement, the Outstanding Events of Default have not been cured or waived.

WHEREAS as of October 18, 2024,, the principal amount outstanding under the Revolving Loans and that certain Ninth Amended and Restated Revolving Loan Note dated December 13, 2022 (the "**Revolving Note**") was $149,000,000.00 (the "**Revolving Loan Principal Amount**"), plus accrued and unpaid interest, and reimbursable fees and charges.

WHEREAS Borrower has requested that Administrative Agent and the Lenders agree to provide Borrower with an additional line of credit (the "**Harvest Line of Credit**") to be used solely for the purpose of paying the operating expenses of Borrower relative to the 2024 crop harvest and such other costs as will be more particularly set forth the Amended Receivership Order (as defined below). Administrative Agent and the Lenders are willing to do so on the terms and conditions specified in this Agreement.

WHEREAS the Loan Agreement grants Administrative Agent, on behalf of the Lenders, a security interest in the Collateral, including "commercial tort claims".

<u>**AGREEMENT**</u>

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Definitions.**   Capitalized terms used but not defined in this Agreement shall have the meanings given to them in the Loan Agreement.

2.      **Incorporation of Recitals**.   Each of the above Recitals is true, accurate and correct and are incorporated herein as the agreement of the parties.

3.      **Acknowledgements and Confirmation of Parties' Agreements.**

3.1      Each Borrower acknowledges and agrees that (i) Borrower is indebted to Administrative Agent and the Lenders pursuant to the Revolving Note (and as amended and restated concurrently herewith) and the other Loan Documents (as the definition of such term is amended concurrently herewith); (ii) all property and assets of Borrower set forth in the definition of "Collateral" in the Loan Agreement constitutes collateral securing the Obligations owing to the Lenders under the Revolving Note and the other Loan Documents; and (iii) no option to extend the maturity of the Obligations is currently available to Borrower.

3.2      Each Borrower hereby acknowledges and agrees that, as of the date hereof, the Obligations include the Revolving Loan Principal Amount, together with accrued but unpaid interest, fees and costs of enforcement (other than late payment penalties or interest accrued on such late payment penalties resulting from Borrower's non-payment of the outstanding principal balance due under the Revolving Note following Administrative Agent's Notice of Acceleration; Demand for Repayment in Full; Notice of Implementation of Default Rate of Interest and Reservation of Rights letter dated June 20, 2024), which constitutes a valid and subsisting Obligation of Borrower owing to the Lenders and is not subject to any credits or offsets of any kind.

3.3      Each Borrower hereby acknowledges and agrees that (i) each of the Outstanding Events of Default set forth in the Prior Default Letters exists, and may continue to exist, after the Effective Date (as defined in **Section 17**, below) and (ii) such Borrower received proper and adequate notice of the Outstanding Events of Default.

3.4      Each Borrower hereby ratifies and reaffirms the validity and enforceability (without defense, counterclaim or offset of any kind) of the security interest granted to Administrative Agent, for the benefit of the Lenders, to secure the Obligations by Borrower pursuant to the Loan Agreement and the other Loan Documents, as each may be modified as set forth below.  Each Borrower acknowledges and agrees that the security interest granted by each Borrower continues to secure the Obligations notwithstanding the occurrence of the Effective Date.  Each such Borrower hereby represents

and warrants to Administrative Agent and the Lenders that, pursuant to the Loan Documents, as the same may be modified below, the Obligations are secured by a security interest in all of Borrower's rights and interests in any and all Collateral of such Borrower Party pursuant to and as set forth and defined in the Loan Agreement, subject to one or more Intercreditor Agreements between one or more of Borrower and Metropolitan Life Insurance Company, a New York corporation (including MetLife Real Estate Lending LLC, a Delaware limited liability company, and Brighthouse Life Insurance Company, a Delaware corporation), Prudential Mortgage Capital Company, LLC, a Delaware limited liability company, PGIM Real Estate Finance, a Delaware limited liability company, The Prudential Insurance Company of America, a New Jersey corporation, BMO Bank N.A., successor to Bank of the West, a California banking corporation, Rabobank N.A., and Conterra Agricultural Capital, LLC, an Iowa limited liability company, and/or their respective successors and assigns (collectively, the "**Other Lenders**").

4.      [RESERVED]

5.      **Amendment of the Loan Documents**.

    5.1     Amendment of the Revolving Note.

        5.1.1    Stated Principal Amount.  The stated principal amount of the Revolving Note is hereby amended to be reduced from One Hundred Fifty Million Dollars and Zero Cents ($150,000,000.00) to One Hundred Forty-Nine Million Dollars and Zero Cents ($149,000,000.00).

        5.1.2    Non-Revolving.  Notwithstanding anything to the contrary in the Revolving Note, the Revolving Note is hereby amended so that amounts repaid may not be reborrowed.

    5.2     Amendment of the Loan Agreement.

        5.2.1    Revolving Loan.  Notwithstanding anything to the contrary in the Loan Agreement, as of the Effective Date, (i) the Revolving Loans are no longer revolving lines of credit, (ii) no Advances are available under the Revolving Loan Notes, (iii) amounts repaid by Borrower under any Revolving Loans may not be reborrowed, (iv) each of the Revolving Loans are ABR Loans and interest on the unpaid principal balance of the Revolving Loans are accruing interest at the Default Rate applicable to ABR Loans, and (v) no interest rate elections are available for the Revolving Loans.

        5.2.2    Administrative Agent.  The definition of the term "Administrative Agent" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

            "Administrative Agent" means U.S. Bank National Association when acting in its capacity as Administrative Agent under any of the Loan Documents, or any successor Administrative Agent.

        5.2.3    Agreement.  The definition of the term "Agreement" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

            "Agreement" means this Second Amended and Restated Loan and Security Agreement, as the same may be amended from time to time.

5.2.4   <u>Borrowing Availability</u>.   The definition of "Borrowing Availability" in <u>Section 1.1</u> of the Loan Agreement is hereby deleted in its entirety.

5.2.5   <u>Commitments</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Commitments</u>" means, as to each Lender, its obligation to make Loans to Borrower under any facility hereunder, in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name with respect to such facility on **Schedule 2.1**, or in the Commitment Assignment and Acceptance executed in accordance with **Section 11.8**, pursuant to which such Lender becomes a party hereto, as applicable, as such amount may be adjusted from time to time in accordance with this Agreement.

5.2.6   <u>Credit Facilities</u>.   The definition of the term "Credit Facilities" in <u>Section 1.1</u> of the Loan Agreement is hereby amended in its entirety to read as follows:

"<u>Credit Facilities</u>" means the Revolving Loans and the Harvest Line of Credit Loan.

5.2.7   <u>Harvest Budget</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Harvest Budget</u>" shall have the meaning set forth in **Section 2.11** hereof.

5.2.8   <u>Harvest Line Commitment</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Harvest Line Commitment</u>" means $11,580,840.   The respective Pro Rata Shares of the Lenders with respect to the Harvest Line Commitment are set forth in **Schedule 2.1**.

5.2.9   <u>Harvest Line of Credit</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Harvest Line of Credit</u>" means the Credit Facility evidenced by the Harvest Line Notes.

5.2.10   <u>Harvest Line Maturity Date</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Harvest Line Maturity Date</u>" means the earlier of (i) November 7, 2024, or (ii) the occurrence of any Harvest Line Maturity Date Event.

5.2.11   <u>Harvest Line Maturity Date Event</u>.   The following new definition is added to <u>Section 1.1</u> of the Loan Agreement:

"<u>Harvest Line Maturity Date Event</u>" shall mean the occurrence of any of the following:

(a)     a receiver takes possession of all or a portion of the Borrowers' crop receipts for the 2023 or 2024 crop years, other than with Administrative Agent's consent; and/or

(b)     Failure to abide by any term of this Agreement which continues unremedied for three Business Days following the earlier of written notice from the Administrative Agent actual knowledge of a Borrower.

5.2.12   Harvest Line Note.  The following new definition is added to Section 1.1 of the Loan Agreement:

"Harvest Line Note" means a promissory note executed by Borrower in favor of a Lender to evidence advances under the Harvest Line of Credit in accordance with such Lender's Pro Rata Share of the Harvest Line Commitment.

5.2.13   Maximum Amount.  The definition of the term "Maximum Amount" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

"Maximum Amount" means, as to the Revolving Commitment, $149,000,000.00, as such Maximum Amount shall be reduced by any principal payment made by Borrower to reduce the outstanding principal amount of the Revolving Loans.

5.2.14   Note.  The definition of the term "Note" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

"Note" means collectively, each Revolving Note and each Harvest Line Note, together with any other notes executed and delivered by Borrower to each Lender under this Agreement.

5.2.15   Pro Rata Share.   The definition of the term "Pro Rata Share" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

"Pro Rata Share" means, with respect to each Lender, the percentage of such Lender's Revolving Commitment and such Lender's Harvest Line Commitment, as such percentage may be increased or decreased pursuant to a Commitment Assignment and Acceptance executed in accordance with **Section 11.8.**

5.2.16   The definition of the term "Requisite Lenders" in Section 1.1 of the Loan Agreement is hereby amended in its entirety to read as follows:

"Requisite Lenders" means (a) as of any date of determination if the Commitments are then in effect, Lenders having in the aggregate more than 50% of the Commitments then in effect and (b) as of any date of determination if the Commitments have then been suspended or terminated and there is then any Indebtedness evidenced by the Notes, Lenders holding Notes evidencing in the aggregate more than 50% of the aggregate Indebtedness then evidenced by the Notes; provided, however, that so long as there are fewer than three (3) Lenders,

considering any Lender and its Affiliates as a single Lender, "Requisite Lenders" shall mean all Lenders.

5.2.17  <u>Revolving Commitment</u>.  The definition of the term "Revolving Commitment" in <u>Section 1.1</u> of the Loan Agreement is hereby amended in its entirety to read as follows:

> "<u>Revolving Commitment</u>" means $149,000,000.00.  The respective Pro Rata Shares of the Lenders with respect to the Revolving Commitment are set forth in **Schedule 2.1**.

5.2.18  <u>Unused Fee</u>.  The definition of "Unused Fee" in <u>Section 1.1</u> of the Loan Agreement is hereby deleted in its entirety.

5.2.19  <u>Section 2.2(b)</u> of the Loan Agreement is amended in its entirety to read as follows:

> (b)  <u>Type of Loans</u>.  Subject to **Section 2.17**, each Borrowing shall be comprised entirely of ABR Loans.  Each Lender at its option may make any Loan by causing any domestic or foreign branch or Affiliate of such Lender to make such Loan; <u>provided</u> that any exercise of such option shall not affect the obligation of Borrower to repay such Loan in accordance with the terms of this Agreement.

5.2.20  <u>Sections 2.10 through 2.18</u> of the Loan Agreement are renumbered as <u>Sections 2.11 through 2.19</u>, any references therein to the Revolving Loan or Revolving Commitments shall include references to the Harvest Line of Credit and Harvest Line Commitments, and the following shall be added as a new <u>Section 2.10</u> of the Loan Agreement:

> 2.10  <u>Harvest Line of Credit</u>.
>
> 2.10.1  <u>Harvest Line Commitment</u>.  Subject to the terms and conditions of this Agreement, Lenders shall, pro rata according to that Lender's Pro Rata Share of the Harvest Line Commitment, extend the Harvest Line of Credit Loan to Borrower by disbursing funds representing the entirety of the Harvest Line Commitment on or shortly after the Effective Date directly to Lance Miller of Pivot Management Group, LLC (the "<u>Receiver</u>"), which Receiver was appointed pursuant to that certain Agreed Order Appointing Receiver with Limited Authority dated September 25, 2024, in matter entitled The Prudential Insurance Company of America and PGIM Real Estate Finance v. ACDF, LLC, et al, Case No. 1:24-cv-01102-KES-SAB (E.D. Cal.) (the "<u>Prudential Matter</u>"), to cover (i) all of Borrower's 2024 harvest expenses on real property not encumbered by deeds of trust in favor of PGIM Real Estate Finance, a Delaware limited liability company, or The Prudential Insurance Company of America, a New Jersey corporation (collectively, the "<u>Prudential Lenders</u>") and (ii) a portion of Borrower's 2024 harvest expenses on real property encumbered by deeds of trust in favor of the Prudential Lenders.  The Receiver will make disbursements as and when set forth in an amended receivership order to be entered in the Prudential

Matter, to be agreed to by Administrative Agent, the Prudential Lenders and Borrower (the "Amended Receivership Order"). The aggregate amount of Harvest Line of Credit Loan outstanding shall not exceed at any time the Harvest Line Commitment. Prior to the Harvest Line Maturity Date, Borrower may repay at any time the outstanding Harvest Line of Credit Loan and any amounts so repaid may not be reborrowed. Harvest Line of Credit Loan shall be evidenced by and repayable in accordance with the terms of the Harvest Line Notes and this Agreement. The Harvest Line of Credit Loan shall be an ABR Loan and no interest rate elections are available for the Harvest Line of Credit Loan.

2.10.2   Loans and Borrowings.

(a)   Borrowing. The Loan shall be made as part of a Borrowing made by the Lenders ratably in accordance with their respective Commitments.

(b)   Type of Loan. Subject to **Section 2.17**, the Borrowing shall an ABR Loan. Each Lender, at its option, may make its Pro Rata Share of the Loan by causing any domestic or foreign branch or Affiliate of such Lender to make such Loan; provided that any exercise of such option shall not affect the obligation of Borrower to repay such Loan in accordance with the terms of this Agreement.

2.10.4   Interest Rate. Interest on the unpaid principal balance of the Harvest Line of Credit Loan shall accrue at the Default Rate applicable to ABR Loans.

2.10.5   Repayment.

(a)   Repayment upon Maturity. Borrower shall pay the principal balance of the Harvest Line of Credit Loan and all other Obligations in full on the Harvest Line Maturity Date, unless earlier due and payable or terminated as provided in this Agreement.

(b)   Optional Prepayments. Borrower may, upon notice to Administrative Agent, at any time and from time to time prepay the Borrowing in whole or in part without premium or penalty, subject to the requirements of this Section.

(c)   Notices. Each such notice pursuant to this Section shall be in the form of a written Prepayment Notice, appropriately completed and signed by a Responsible Officer of Borrower, or may be given by telephone to Administrative Agent (if promptly confirmed by such a written Prepayment Notice consistent with such telephonic notice) and must be received by Administrative Agent not later than (A) 12:00 p.m. (California time) on the date of prepayment, if there is more than one (1) Lender party to this Agreement, or (B) 2:00 p.m. (California

time) if U.S. Bank National Association, or any successor thereto, is the only Lender party to this Agreement. Each Prepayment Notice shall specify (x) the prepayment date and (y) the principal amount of the Borrowing or portion thereof to be prepaid. Promptly following receipt of any such notice relating to the Borrowing, Administrative Agent shall advise the applicable Lenders of the contents thereof. Each Prepayment Notice shall be irrevocable.

2.10.6 <u>Cooperation</u>. Borrower agrees to cooperate with Administrative Agent and the Prudential Lenders to implement the Amended Receivership Order, including, without limitation, by paying over all crop receipts to the Receiver.

2.10.7 <u>Other Conditions to Extension of Harvest Line of Credit</u>. **Section 2.7** and **Section 2.8** of the Agreement shall be applicable to the extension of credit under this **Section 2.10**.

2.10.8 <u>Application of Proceeds and Payments</u>. Notwithstanding anything to the contrary in **Section 2.9** hereof, all payments received from or on behalf of Borrower or from proceeds of Collateral after the initial funding of the Harvest Line of Credit shall be applied first to interest then due and payable on the Harvest Line of Credit until paid in full and then to principal then due and payable on the Harvest Line of Credit until paid in full.

5.2.21 <u>Use of Proceeds</u>. Section 2.11 of the Loan Agreement is amended in its entirety to read as follows:

2.11 <u>Use of Proceeds</u>. The proceeds of the Revolving Loans shall be used by Borrower for general working capital needs in the ordinary course of Borrower's crop production business and the proceeds of the Harvest Line of Credit Loan shall be used solely for the purpose of paying the operating expenses relative to the 2024 harvest and other costs as will be more particularly set forth in the Amended Receivership Order and in the budget attached as **Exhibit D** hereto (the "<u>Harvest Budget</u>").

5.2.22 <u>Representations, Warranties and Affirmative Covenants</u>. The following is added as a new <u>Section 4.23</u> to the Loan Agreement:

4.23 <u>Receipt of Crop Payments</u>. Unless otherwise agreed to by the Lenders, in the Lenders' sole discretion, if any Borrower shall receive payments related to any crops from the 2023 or 2024 crop year, whether by sale of such crop or as a result of an insurance payment, such payment shall be received by such Borrower in trust for Administrative Agent, as administrative agent for the Lenders, and shall forthwith be delivered and transferred to Administrative Agent.

5.2.23 <u>Notices</u>. Section 11.7(a) of the Loan Agreement is revised in its entirety to read as follows:

(a)      All notices and other communications under this Agreement and the other Loan Documents shall be in writing and shall be deemed to have been given (i) three (3) days after deposit in the mail, first class mail, postage prepaid, or (ii) one (1) day after being entrusted to a reputable commercial overnight delivery service, or (iii) if transmitted by e-mail, when received, or (iv) when sent out by facsimile transmission addressed to the party to which such notice is directed at its address determined as provided in this **Section 11.7**.  Any notice sent by a method other than by e-mail shall also be e-mailed to the party to which such notice is directed.  All notices and other communications under this Agreement shall be given to the parties hereto at the following addresses:

[*Remainder of page intentionally left blank*]

(1)     If to Borrower:

Maricopa Orchards, LLC
5260 N. Palm Ave, Suite 421
Fresno, CA  93704
Attn:  Elizabeth A. Steinhauer-Clark, Esq.
Telephone No.:  (559) 284-5110
E-mail:  Liz.SteinhauerClark@maricopaorchards.com

with a copy to:

McDermott Will & Emery LLP
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Attn: David Hurst and John Hammond
E-mail:  dhurst@mwe.com and jhammond@mwe.com

(2)     If to Administrative Agent or the Lenders:

U.S. Bank National Association
1095 Avenue of the Americas, 15th Floor
New York, NY  10036
Attn:  Karen E. Boyer
Telephone No.: (646) 275-6081
E-mail:  karen.boyer@usbank.com

with a copy to:

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4106
Attn:  Michael M. Lauter
Telephone No.: (415) 434-9100
Facsimile No.:  (415) 434-3947
E-mail:  MLauter@sheppardmullin.com

5.2.24  <u>MUFG Union Bank, N.A.</u>  Wherever the name "MUFG Union Bank, N.A." appears in the Loan Agreement, it shall be replaced by the name "U.S. Bank National Association".

5.2.25  <u>References to Revolving Loan or Revolving Commitments</u>.  Any references to the Revolving Loan or Revolving Commitment in Section 3 through Section 14 of the Loan Agreement shall include references to the Harvest Line of Credit Loan and Harvest Line Commitments as an additional Credit Facility.

5.2.26  <u>Harvest Line Budget</u>.  The Harvest Line Budget shall be attached as a new **Exhibit D** to the Loan Agreement substantially in the form set forth on **Rider 1** attached hereto.

5.2.27  <u>Commitments</u>.  **Schedule 2.1** of the Loan Agreement is amended in its entirety as set forth on **Rider 2** attached hereto.

5.3     <u>Amendment of the Other Loan Documents</u>.  Wherever the name "MUFG Union Bank, N.A." appears in the other Loan Documents, it shall be replaced by the name "U.S. Bank National Association" and whenever the terms "Revolving Loan" or "Revolving Commitment" appear in any other Loan Document (other than in the Revolving Loan Notes), the terms "Harvest Line of Credit Loan" and "Harvest Line Commitments" shall be included as additional Credit Facilities of Borrower applicable to such Loan Document.

5.4     <u>Ratification of Security Agreement Provisions</u>.  Borrower hereby ratifies and reaffirms the continuing effectiveness of <u>Section 7</u> of the Loan Agreement, granting to Administrative Agent, for the ratable benefit of the Lenders, a security interest in and upon all of its right, title and interest in the Collateral to secure the prompt payment and performance of the Obligations.

6.     **Conditions Precedent**.  Borrower understands that this Agreement shall not be effective unless and until each of the following conditions precedent have been satisfied or waived by Administrative Agent and the Lenders in their sole discretion (the "**Effective Date Deliverables**").  The date on which all of such conditions precedent have been satisfied or waived by the Administrative Agent and the Lenders shall be referred to as the "**Effective Date**".  Such conditions precedent are as follows:

6.1     Administrative Agent shall have received the following from Borrower, in form and substance satisfactory to Administrative Agent and the Lenders:

6.1.1     This Agreement, executed and delivered by Borrower;

6.1.2     A Harvest Line Note, duly executed by Borrower, in the principal amount of the Harvest Line Commitment;

6.1.3     A Guaranty of the Harvest Line Commitment, to include a Reaffirmation of the Fifth Amended and Restated Continuing Guaranty, executed by the Guarantors;

6.1.4     Such other documents, agreements or amendments to loan documents as reasonably requested by Administrative Agent.

6.2     Administrative Agent shall have received, in form and substance satisfactory to Administrative Agent and the Lenders, an agreement between Administrative Agent and the Prudential Lenders resolving their competing claims regarding the priority of their security interests in Borrower's Crops and Crop Collateral (each as defined in that certain Intercreditor Agreement between Administrative Agent's predecessor in interest and the Prudential Lenders dated July 9, 2020, which was recorded on July 24, 2020, under Fresno County (California) No. 2020-0093784, Kern County (California) No. 220097210, Merced County (California) No. 2020024850, and Tulare County (California) No. 2020-0043489, as the same has been amended from time to time) and other matters addressed therein.

6.3     The Amended Receivership Order in the Prudential Matter (each as defined in Section 2.10.1 above) shall have been entered in the form contemplated in the agreement between the Administrative Agent and the Lenders referred to in Section 6.2 above.

7.     **Representations and Warranties.**  To induce Administrative Agent and the Lenders to enter into this Agreement, each Borrower hereby represents and warrants to Administrative Agent and the Lenders as follows:

7.1     This Agreement has been duly executed and delivered by such Borrower and is the binding obligation of such Borrower, enforceable against such Borrower in accordance with its terms,

except as such enforceability may be limited by bankruptcy, insolvency, reorganization, liquidation, moratorium or other similar laws of general application and equitable principles relating to or affecting creditors' rights.

7.2     The execution and delivery by such Borrower that is not a natural person of this Agreement and the performance by such Borrower of its obligations under the Loan Agreement and the other Loan Documents, as amended hereby, have been duly authorized by all necessary action on the part of such Borrower.

7.3     The execution and delivery by such Borrower that is not a natural person of this Agreement and the performance by such Borrower of its obligations under the Loan Agreement and the other Loan Documents, as amended hereby, do not and will not contravene (a) any law or regulation binding on or affecting such Borrower, or (b) the organizational documents of such Borrower.

7.4     The execution and delivery by such Borrower that is not a natural person of this Agreement and the performance by such Borrower of its obligations hereunder and under the Loan Agreement and the other Loan Documents, as amended hereby, do not require any order, consent, approval, license, authorization or validation of, or filing, recording or registration with, or exemption by any governmental or public body or authority, or subdivision thereof, binding on such Borrower, except as already has been obtained or made.

8.     **Limitation of Agreement**.

8.1     This Agreement is effective for the purposes set forth herein and shall be limited precisely as written and shall not be deemed to (a) be a consent to any amendment, waiver or modification of any other term or condition of any Loan Document, or (b) otherwise prejudice any right or remedy which Administrative Agent  and the Lenders may now have or may have in the future under or in connection with any Loan Document.

8.2     This Agreement shall be construed in connection with and as part of the Loan Documents, and all terms, conditions, representations, warranties, covenants, and agreements set forth in the Loan Agreement, other than those expressly consented to by Administrative Agent and the Lenders in this Agreement, are hereby ratified and confirmed and shall remain in full force and effect.  In addition to those "Events of Default" specifically enumerated in the Loan Agreement, the failure to comply with the terms of any covenant or agreement contained herein shall constitute an Event of Default and shall entitle Administrative Agent and the Lenders to exercise any and all of its rights and remedies as a result of the occurrence of the same.

8.3     This Agreement does not constitute a waiver or release by Administrative Agent and the Lenders of any Obligations or of any Outstanding Events of Default or of any Event of Default which may arise in the future after the date hereof.

8.4     Except as expressly set forth herein, the Loan Agreement shall remain in full force and effect, and the Loan Agreement is ratified and affirmed by the parties hereto.

9.     **[RESERVED]**.

10.     **Costs and Expenses**.  Borrower agrees to pay to Administrative Agent all costs and expenses that Borrower is obligated to pay under Section 11.2 of the Loan Agreement, including but not limited to all costs and expenses of relating to this Agreement.

11.     **Severability**.  In case any provision of this Agreement shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Agreement and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

12.     **Caption Headings**.  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

13.     **Further Assurances**.  Each party shall execute such additional documents and take such additional actions as any other party may reasonably request to carry out the purpose and intent of this Agreement and the other documents to be executed as provided herein.

14.     **Governing Law; Venue**.  Section 11.14 of the Loan Agreement is hereby incorporated by reference.

15.     **Integration**.  This Agreement represents the entire agreement about this subject matter and supersedes prior negotiations or agreements.

16.     **Counterparts.**  This Agreement may be executed in any number of counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile or other electronic transmission format (e.g., ".pdf") shall be effective as delivery of a manually executed counterpart of this Agreement.  The words "execution", "signed", "signature" and words of like import in this Agreement shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity and enforceability as a manually executed signature or the use of a paper-based recordkeeping systems, as the case may be, to the extent and as provided for in any applicable law, including, without limitation, any state law based on the Uniform Electronic Transactions Act.

17.     **Cooperation re Crop Assignments and Crop Insurance**.  Borrower agrees that it will         provide copies of agreements with all existing purchasers and/or processors of the Borrowers' 2024 crop, and will cooperate with Administrative Agent by providing any executed crop assignments relative to contracts with purchasers and/or processors for the 2023 and 2024 crop that the Administrative Agent requests.  Borrower also agrees to provide Administrative Agent with copies of certificates of insurance for all of Borrowers' crop insurance policies evidencing the addition thereto of Administrative Agent as an additional insured.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**Administrative Agent and Lender:**

**U.S. BANK NATIONAL ASSOCIATION**

By: *Karen E. Boyer*
Name:   Karen E. Boyer
Title:    Senior Vice President

**Borrower**:

**MARICOPA ORCHARDS, LLC**,
a California limited liability company

By: _____

Name:   Farshid Assemi
Title:    General Manager

S-2

**Borrower**:

**ACDF, LLC,**
a California limited liability company

By: _____
Name:   Farshid Assemi
Title:   General Manager

**Borrower**:

**C & A FARMS, LLC**,
a California limited liability company

By: _____

Name:  Farshid Assemi
Title:  General Manager

**Borrower**:

**LINCOLN GRANTOR FARMS, LLC**,
a California limited liability company

By: _____
Name:   Neema Assemi
Title:    General Manager

Fifth Amendment
0A22-152623

**Borrower:**

**CANTUA ORCHARDS, LLC**,
a California limited liability company

By: _____
     Farshid Assemi, Manager


By: _____
     Farid Assemi, Manager


By: _____
     Darius Assemi, Manager

**Borrower:**

**CANTUA ORCHARDS, LLC,**
a California limited liability company

By: _____
    Farshid Assemi, Manager

By: _____
    Farid Assemi, Manager

By: _____
    Darius Assemi, Manager

**Borrower:**

**FAVIER RANCH, LLC,**
a California limited liability company

By: _____
Nader Assemi, Manager

By: _____
Neema Assemi, Manager

By: _____
Darius Assemi, Manager

**Borrower**:

**GRANTLAND FARMS, LLC**,
a California limited liability company

By: _____
      Nader Assemi, General Manager

By: _____
      Neema Assemi, General Manager

By: _____
      Darius Assemi, General Manager

**Borrower**:

**WHITESBRIDGE FARMS, LLC**,
a California limited liability company

By: _____
      Nader Assemi, Manager

By: _____
      Neema Assemi, Manager

By: _____
      Darius Assemi, Manager

**Borrower**:

**PANOCHE PISTACHIOS, LLC**,
a California limited liability company

By: _____
     Neema Assemi, General Manager

By: _____
     Nader Assemi, General Manager

By: _____
     Darius Assemi, General Manager

**Borrower**:

**SAGEBERRY FARMS, LLC**,
a California limited liability company

By: _____

    Neema Assemi, General Manager

**Borrower:**

**ACAP FARMS, LLC,**
a California limited liability company

By: _____
Farid Assemi, Manager

By: _____
Farshid Assemi, Manager

By: _____
Darius Assemi, Manager

**Borrower:**

**ACAP FARMS, LLC**,
a California limited liability company

By: _____
    Farid Assemi, Manager

By: _____
    Farshid Assemi, Manager

By: _____
    Darius Assemi, Manager

S-12

**Borrower:**

**A&H INVESTMENTS, LLC**,
a California limited liability company

By: _____
    Farid Assemi, Manager

By: _____
    Farshid Assemi, Manager

**Borrower:**

**A&H INVESTMENTS, LLC**,
a California limited liability company

By: _____
      Farid Assemi, Manager

By: _____
      Farshid Assemi, Manager

**Borrower:**

**ASHLAN & HAYES FARMS, LLC**,
a California limited liability company

By: _____
     Neema Assemi, General Manager

By: _____
     Darius Assemi, General Manager

S-14

**Borrower:**

**BEAR FLAG FARMS, LLC**,
a California limited liability company

By: _____
     Neema Assemi, General Manager

By: _____
     Darius Assemi, General Manager

Borrower:

**COPPER AVENUE INVESTMENTS, LLC,**
a California limited liability company

By: _____
      Farid Assemi, General Manager

By: _____
      Farshid Assemi, General Manager

By: _____
      Darius Assemi, General Manager

**Borrower:**

**COPPER AVENUE INVESTMENTS, LLC**,
a California limited liability company

By: _____
    Farid Assemi, General Manager

By: _____
    Farshid Assemi, General Manager

By: _____
    Darius Assemi, General Manager

**Borrower:**

**WILLOW AVENUE INVESTMENTS, LLC**,
a California limited liability company

By: _____
       Neema Assemi, General Manager

By: _____
       Darius Assemi, General Manager

**Borrower:**

**GRANVILLE FARMS, LLC**,
a California limited liability company

By: _____

Farshid Assemi, Manager

**Borrower:**

**FNF FARMS, LLC**,
a California limited liability company

By: _____
       Farshid Assemi, Manager

S-19

**Borrower:**

**KAMM SOUTH, LLC**,
a California limited liability company

By:         _____

            Farshid Assemi, General Manager

**Borrower:**

**GRADON FARMS, LLC,**
a California limited liability company

By:  _____
        Neema Assemi, Manager

S-21

Borrower:

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____

Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Member

By: _____

Farshid Assemi, Co- Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____

Neema Assemi, Co- Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____

Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust, Member

By: _____

Nada L .Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Member

By: _____

Donald E. Schramm, Trustee of the
Donald E. Schramm and Nada L. Schramm
Revocable Trust, Member

By: _____

Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Member

S-22

**Borrower:**

**MANNING AVENUE PISTACHIOS, LLC,**
a California limited liability company

By: _____
Farid Assemi, Trustee of the Farshid Assemi
1997 Ranch Trust, Member

By: _____
Farshid Assemi, Co- Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Neema Assemi, Co- Trustee of the Farid Assemi
1997 Ranch Trust, Member

By: _____
Darius Assemi, Trustee of the Amended and
Restated Darius Assemi Revocable Trust, Member

By: _____
Nada L .Schramm, Trustee of the Donald E.
Schramm and Nada L. Schramm Revocable
Trust, Member

By: _____
Donald E. Schramm, Trustee of the
Donald E. Schramm and Nada L. Schramm
Revocable Trust, Member

By: _____
Keith A. Thomsen, Trustee of the Thomsen
Family Trust, Member

**Borrower:**

**MANNING AVENUE PISTACHIOS, LLC**,
a California limited liability company

By: _____
    Farid Assemi, Trustee of the Farshid Assemi
    1997 Ranch Trust, Member

By: _____
    Farshid Assemi, Co- Trustee of the Farid Assemi
    1997 Ranch Trust, Member

By: _____
    Neema Assemi, Co- Trustee of the Farid Assemi
    1997 Ranch Trust, Member

By: _____
    Darius Assemi, Trustee of the Amended and
    Restated Darius Assemi Revocable Trust, Member

By: _____
    Nada L .Schramm, Trustee of the Donald E.
    Schramm and Nada L. Schramm Revocable
    Trust, Member

By: _____
    Donald E. Schramm, Trustee of the
    Donald E. Schramm and Nada L. Schramm
    Revocable Trust, Member

By: _____
    Keith A. Thomsen, Trustee of the Thomsen
    Family Trust, Member

**Borrower:**

**WINSTON FARMS, LLC,**
a California limited liability company

By: _____
Neema Assemi, Manager

**Borrower:**

**FFGT FARMS, LLC,**
a California limited liability company

By:   _____
        Neema Assemi, Manager

**Borrower:**

**ADAMS GRANTOR LAND, LLC**,
a California limited liability company

By:   _____

Farshid Assemi, General Manager

**Borrower:**

**ASSEMI AND SONS, INC.,**
a California corporation

By: _____
Farshid Assemi, Senior Vice President

By: _____
Jason Hollrah, Chief Financial Officer

**Rider 1**

Exhibit D

**HARVEST BUDGET**

See Attached

**Exhibit 1 - Harvest Budget**

| ($'s in thousands)   Week Ending: | Forecast | | | | | | Harvest Budget Total |
|---|---|---|---|---|---|---|---|
| | 9/27 | 10/4 | 10/11 | 10/18 | 10/25 | 11/1 | |
| Total Cash Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | |
| **Operating Disbursements** | | | | | | | |
| Labor | $ - | $ (255) | $ - | $ (255) | $ - | $ (255) | $ (765) |
| CapEx | - | - | - | - | (151) | - | (151) |
| Property Tax & Land Base Charges | (1,600) | - | - | - | - | - | (1,600) |
| Cultural | (366) | (442) | (442) | (442) | (442) | (442) | (2,574) |
| Water & Irrigation | (1,680) | (108) | (108) | (108) | (1,217) | (108) | (3,330) |
| Harvest | (3,141) | (3,000) | (2,705) | (2,200) | (1,500) | (800) | (13,347) |
| Overhead | (2,911) | (311) | (311) | (311) | (311) | (311) | (4,464) |
| Harvest Contingency | (157) | (150) | (122) | (75) | (75) | (40) | (619) |
| Past Due A/P | (1,100) | (2,719) | (1,869) | (1,219) | (1,000) | (500) | (8,407) |
| **Cash Disbursements from Operations** | $ (10,955) | $ (6,984) | $ (5,557) | $ (4,609) | $ (4,695) | $ (2,455) | $ (35,256) |
| | | | | | | | |
| **Net Operating Cash Flow** | $ (10,955) | $ (6,984) | $ (5,557) | $ (4,609) | $ (4,695) | $ (2,455) | $ (35,256) |
| | | | | | | | |
| **Restructuring Cash Flow** | | | | | | | |
| Receiver Professional Fees | $ (208) | $ (171) | $ (115) | $ (115) | $ (89) | $ (89) | $ (787) |
| **Total Restructuring Cash Flow** | $ (208) | $ (171) | $ (115) | $ (115) | $ (89) | $ (89) | $ (787) |
| | | | | | | | |
| **Total Net Cash Flow** | $ (11,163) | $ (7,155) | $ (5,672) | $ (4,724) | $ (4,784) | $ (2,544) | $ (36,043) |
| | | | | | | | |
| **Beginning Cash Balance** | $ 7,021 | $ (4,142) | $ (11,297) | $ (16,969) | $ (21,693) | $ (26,477) | $ 7,021 |
| Plus: Change in Cash | (11,163) | (7,155) | (5,672) | (4,724) | (4,784) | (2,544) | (36,043) |
| **Ending Cash Balance** | $ (4,142) | $ (11,297) | $ (16,969) | $ (21,693) | $ (26,477) | $ (29,022) | $ (29,022) |
| Less: Payroll Reserve | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) |
| **Total Liquidity** | $ (6,289) | $ (13,444) | $ (19,116) | $ (23,840) | $ (28,624) | $ (31,169) | $ (31,169) |

**Rider 2**

<u>Schedule 2.1</u>

<u>Commitments</u>

**Revolving Commitment**:

$149,000,000.00  – U.S. Bank National Association          Percentage:  100%

**Harvest Line Commitment**:

$11,580,840.00  – U.S. Bank National Association          Percentage:  100%

**EXHIBIT E**

**GUARANTY OF HARVEST LINE COMMITMENT**

**AND REAFFIRMATION OF**

**FIFTH AMENDED AND RESTATED CONTINUING GUARANTY**

**1.      Obligations Guarantied.**    For consideration, the adequacy and sufficiency of which is acknowledged, the undersigned (individually and collectively, "**Guarantor**") unconditionally guaranties and promises (a) to pay to U.S. Bank National Association (as successor in interest to MUFG UNION BANK, N.A., "**U.S. Bank**"), as administrative agent (in such capacity, "**Administrative Agent**") for the lenders (each, a "**Lender**" and collectively, the "**Lenders**") from time to time party to that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019, by and among Administrative Agent, the Lenders and Borrower (as defined below), as the same has been and may be amended from time to time (as the same has been and may be modified, supplemented, amended, amended and restated or replaced from time to time, the "**Loan Agreement**"), on demand, in lawful United States money, all Obligations of MARICOPA ORCHARDS, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, C & A FARMS, LLC, a California limited liability company, LINCOLN GRANTOR FARMS, LLC, a California limited liability company, CANTUA ORCHARDS, LLC, a California limited liability company, FAVIER RANCH, LLC, a California limited liability company, GRANTLAND FARMS, LLC, a California limited liability company, WHITESBRIDGE FARMS, LLC, a California limited liability company, PANOCHE PISTACHIOS, LLC, a California limited liability company, SAGEBERRY FARMS, LLC, a California limited liability company, ACAP FARMS, LLC, a California limited liability company, ASHLAN & HAYES FARMS, LLC, a California limited liability company, BEAR FLAG FARMS, LLC, a California limited liability company, COPPER AVENUE INVESTMENTS, LLC, a California limited liability company, WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company, A&H INVESTMENTS, LLC, a California limited liability company, GRANVILLE FARMS, LLC, a California limited liability company, FNF FARMS, LLC, a California limited liability company, KAMM SOUTH, LLC, a California limited liability company, GRADON FARMS, LLC, a California limited liability company, MANNING AVENUE PISTACHIOS, LLC, a California limited liability company, WINSTON FARMS, LLC, a California limited liability company, FFGT FARMS, LLC, a California limited liability company, ADAMS GRANTOR LAND, LLC, a California limited liability company, and ASSEMI AND SONS, INC., a California corporation (individually and collectively, "**Borrower**"), to Administrative Agent and/or the Lenders, and (b) to perform all undertakings of Borrower in connection with the Obligations. "**Obligations**" is used in its most comprehensive sense and includes any and all debts, liabilities, rental obligations, and other obligations and liabilities of every kind of Borrower to Administrative Agent and/or the Lenders, whether made, incurred or created previously, concurrently or in the future, whether voluntary or involuntary and however arising, whether incurred directly or acquired by Administrative Agent or the Lenders by assignment or succession, whether due or not due, absolute or contingent, liquidated or unliquidated, legal or equitable, whether Borrower is liable individually or jointly or with others, whether incurred before, during or after any bankruptcy, reorganization, insolvency, receivership or similar proceeding ("**Insolvency Proceeding**"), and whether recovery thereof is or becomes barred by a statute of limitations or is or becomes otherwise unenforceable, together with all expenses of, for and incidental to collection, including reasonable attorneys' fees.  Unless otherwise defined herein, all capitalized terms used herein shall have the respective meanings given to those terms in the Loan Agreement.

**2.      Limitation on Guarantor's Liability.**  Although this Guaranty of Harvest Line Commitment ("**Guaranty**") covers all Obligations, Guarantor's liability under this Guaranty for Borrower's Obligations shall not exceed at any one time the sum of the following (the "**Guarantied Liability Amount**"): (a) Eleven Million Five Hundred Eighty Thousand Eight Hundred Forty and No/100 Dollars ($11,580,840.00) for Obligations representing principal (the "**Principal Amount**") under the Harvest Line of Credit (as defined in that certain Fifth Amendment to Second Amended and Restated Loan and Security Agreement dated as of October 30, 2024, by and among Borrower, Administrative Agent and the

Lenders (the "**Fifth Modification**")), (b) all interest, fees and like charges owing and allocable to the Principal Amount as determined by Administrative Agent, (c) all amounts owing to Administrative Agent under any interest rate swap or similar agreement heretofore or hereinafter entered into between Borrower and Administrative Agent, (d) all amounts owing to Administrative Agent under any foreign exchange contract or similar agreement heretofore or hereinafter entered into between Borrower and Administrative Agent, and (e) without allocation in respect of the Principal Amount, all costs, attorneys' fees, and expenses of Administrative Agent and/or the Lenders relating to or arising out of the enforcement of the Obligations and all indemnity liabilities of Guarantor under this Guaranty.  The foregoing limitation applies only to Guarantor's liability under this particular Guaranty.  Unless Administrative Agent otherwise agrees in writing, every other guaranty of any Obligations previously, concurrently, or hereafter given to Administrative Agent and/or the Lenders (or any of them) by Guarantor is independent of this Guaranty and of every other such guaranty.  Without notice to Guarantor, the Lenders may permit the Obligations to exceed the Principal Amount and may apply or reapply any amounts received in respect of the Obligations from any source other than from Guarantor to that portion of the Obligations not included within the Guarantied Liability Amount.

**3.** **Continuing Nature/Revocation/Reinstatement.**  This Guaranty is in addition to any other guaranties of the Obligations, is continuing and covers all Obligations, including those arising under successive transactions which continue or increase the Obligations from time to time, renew all or part of the Obligations after they have been satisfied, or create new Obligations.  Revocation by one or more signers of this Guaranty or any other guarantors of the Obligations shall not (a) affect the obligations under this Guaranty of a non-revoking Guarantor, (b) apply to Obligations outstanding when Administrative Agent receives written notice of revocation, or to any extensions, renewals, readvances, modifications, amendments or replacements of such Obligations, or (c) apply to Obligations, arising after Administrative Agent receives such notice of revocation, which are created pursuant to a commitment existing at the time of the revocation, whether or not there exists an unsatisfied condition to such commitment or Administrative Agent or any of the Lenders has another defense to its performance.  All of Administrative Agent's rights pursuant to this Guaranty continue with respect to amounts previously paid to Administrative Agent or the Lenders on account of any Obligations which are thereafter restored or returned by Administrative Agent or any Lender, whether in an Insolvency Proceeding of any Borrower or for any other reason, all as though such amounts had not been paid to Administrative Agent or such Lender; and Guarantor's liability under this Guaranty (and all its terms and provisions) shall be reinstated and revived, notwithstanding any surrender or cancellation of this Guaranty.  Administrative Agent, at its sole discretion, may determine whether any amount paid to it or any Lender must be restored or returned; provided, however, that if Administrative Agent elects to contest any claim for return or restoration, Guarantor agrees to indemnify and hold Administrative Agent and each Lender harmless from and against all costs and expenses, including reasonable attorneys' fees, expended or incurred by such entity in connection with such contest.  If any Insolvency Proceeding is commenced by Borrower or Guarantor or any other guarantor, or if any Insolvency Proceeding is commenced against any Borrower or Guarantor or any other guarantor and is not dismissed within sixty (60) calendar days, at Administrative Agent's election, Guarantor's obligations under this Guaranty shall immediately and without notice or demand become due and payable, whether or not then otherwise due and payable.

**4.** **Authorization.**  Guarantor authorizes Administrative Agent and the Lenders, without notice and without affecting Guarantor's liability under this Guaranty, from time to time, whether before or after any revocation of this Guaranty, to (a) renew, compromise, extend, accelerate, release, subordinate, waive, amend and restate, or otherwise amend or change, the interest rate, time or place for payment or any other terms of all or any part of the Obligations; (b) accept delinquent or partial payments on the Obligations; (c) take or not take security or other credit support for this Guaranty or for all or any part of the Obligations, and exchange, enforce, waive, release, subordinate, fail to enforce or perfect, sell, or otherwise dispose of any such security or credit support; (d) apply proceeds of any such security or credit support and direct the order or manner of its sale or enforcement as Administrative Agent, at its sole discretion, may determine; and (e) release or substitute Borrower or any guarantor or other person or entity liable on the Obligations.

5.      **Waivers.**  To the maximum extent permitted by law, Guarantor waives (a) all rights to require Administrative Agent or the Lenders to proceed against Borrower, or any other guarantor, or proceed against, enforce or exhaust any security for the Obligations or to marshal assets or to pursue any other remedy in Administrative Agent's or any Lender's power whatsoever; (b) all defenses arising by reason of any disability or other defense of any Borrower, the cessation for any reason of the liability of any Borrower, any defense that any other indemnity, guaranty or security was to be obtained, any claim that Administrative Agent or any Lender has made Guarantor's obligations more burdensome or more burdensome than any Borrower's obligations, and the use of any proceeds of the Obligations other than as intended or understood by the Lenders or Guarantor; (c) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and of the existence or creation of new or additional Obligations, and all other notices  or demands to which Guarantor might otherwise be entitled; (d) all conditions precedent to the effectiveness of this Guaranty; (e) all rights to file a claim in connection with the Obligations in an Insolvency Proceeding filed by or against any Borrower; (f) all rights to require Administrative Agent or the Lenders to enforce any of their remedies; and (g) until the Obligations are satisfied or fully paid with such payment not subject to return: (i) all rights of subrogation, contribution, indemnification or reimbursement, (ii) all rights of recourse to any assets or property of any Borrower or to any collateral or credit support for the Obligations, (iii) all rights to participate in or benefit from any security or credit support Administrative Agent or the Lenders may have or acquire,  and (iv) all rights, remedies and defenses Guarantor may have or acquire against any Borrower.  Guarantor understands that if Administrative Agent forecloses by trustee's sale on a deed of trust securing any of the Obligations, Guarantor would then have a defense preventing Administrative Agent and the Lenders from thereafter enforcing Guarantor's liability for the unpaid balance of the secured Obligations.  This defense arises because the trustee's sale would eliminate Guarantor's right of subrogation, and therefore Guarantor would be unable to obtain reimbursement from Borrower.  Guarantor specifically waives this defense and all rights and defenses that Guarantor may have because the Obligations are secured by real property.  This means, among other things: (a) Administrative Agent and the Lenders may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by any Borrower; and (b) if Administrative Agent forecloses on any real property collateral pledged by any Borrower: (i) the amount of the Obligations may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) Administrative Agent and/or the Lenders may collect from Guarantor even if Administrative Agent, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure or similar laws in other states.

6.      **Guarantor to Keep Informed.**  Guarantor warrants having established with Borrower adequate means of obtaining, on an ongoing basis, such information as Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Obligations.  Guarantor assumes sole, continuing responsibility for obtaining such information from sources other than from Administrative Agent.  Neither Administrative Agent nor any of the Lenders has any duty to provide any information to Guarantor until Administrative Agent receives Guarantor's written request for specific information in the possession of Administrative Agent or a Lender and Borrower have authorized Administrative Agent or such Lender to disclose such information to Guarantor.

7.      **Subordination.**  All obligations of Borrower to Guarantor which presently or in the future may exist ("**Guarantor's Claims**") are hereby subordinated to the Obligations.  At Administrative Agent's request, Guarantor's Claims will be enforced and performance thereon received by Guarantor only as a trustee for Administrative Agent, and Guarantor will promptly pay over to Administrative Agent all proceeds recovered for application to the Obligations without reducing or affecting Guarantor's liability under other provisions of this Guaranty.

8.      **Security.**  To secure Guarantor's obligations under this Guaranty, other than for payment of Obligations which are subject to the disclosure requirements of the United States Truth in Lending Act, Guarantor grants Administrative Agent, for the benefit of the Lenders, a security interest in all moneys,

general and special deposits, instruments and other property of Guarantor at any time maintained with or held by Administrative Agent or any of the Lenders, and all proceeds of the foregoing.

**9.      Authorization.**  Where any Borrower is a corporation, partnership or other entity, Administrative Agent need not inquire into or verify the powers of such Borrower or authority of those acting or purporting to act on behalf of such Borrower, and this Guaranty shall be enforceable with respect to any Obligations the Lenders grant or create in reliance on the purported exercise of such powers or authority.

**10.      Assignments.**  Without notice to Guarantor, any Lender may assign its respective rights in the Obligations and this Guaranty, in whole or in part, and may disclose to any prospective or actual purchaser of all or part of the Obligations any and all information such Lender has or acquires concerning Guarantor, this Guaranty and any security for this Guaranty.

**11.      Counsel Fees and Costs.**  The prevailing party shall be entitled to attorneys' fees (including a reasonable allocation for Administrative Agent's internal counsel) and all other costs and expenses which it may incur in connection with the enforcement or preservation of its rights under, or defense of, this Guaranty or in connection with any other dispute or proceeding relating to this Guaranty, whether or not incurred in any Insolvency Proceeding, arbitration, litigation or other proceeding.

**12.      Married Guarantors.**  By executing this Guaranty, a Guarantor who is married agrees that recourse may be had against his or her separate and community property for all his or her obligations under this Guaranty.

**13.      Multiple Guarantors/Borrowers.**  When there is more than one Borrower named herein or when this Guaranty is executed by more than one Guarantor, then the words "Borrower" and "Guarantor", respectively, shall mean all and any one or more of them, and their respective successors and assigns, including debtors-in-possession and bankruptcy trustees; words used herein in the singular shall be considered to have been used in the plural where the context and construction so requires in order to refer to more than one Borrower or Guarantor, as the case may be.

**14.      Integration/Severability/Amendments.**      This Guaranty is intended by Guarantor and Administrative Agent as the complete, final expression of their agreement concerning its subject matter. It supersedes all prior understandings or agreements with respect thereto and may be changed only by a writing signed by Guarantor and Administrative Agent.  No course of dealing, or parole or extrinsic evidence shall be used to modify or supplement the express terms of this Guaranty.  If any provision of this Guaranty is found to be illegal, invalid or unenforceable, such provision shall be enforced to the maximum extent permitted, but if fully unenforceable, such provision shall be severable, and this Guaranty shall be construed as if such provision had never been a part of this Guaranty, and the remaining provisions shall continue in full force and effect.

**15.      Joint and Several.**  If more than one Guarantor signs this Guaranty, the obligations of each Guarantor under this Guaranty are joint and several, and independent of the Obligations and of the obligations of any other person or entity.  A separate action or actions may be brought and prosecuted against any one or more guarantors, whether action is brought against Borrower or other guarantors of the Obligations, and whether Borrower or others are joined in any such action.

**16.      Notice.**  Any notice, including notice of revocation, given by any party under this Guaranty shall be effective only upon its receipt by the other party and only if (a) given in writing and (b) personally delivered or sent by United States mail, postage prepaid, and addressed to Administrative Agent or Guarantor at their respective addresses for notices indicated below.  Guarantor and Administrative Agent may change the place to which notices, requests, and other communications are to be sent to them by giving written notice of such change to the other.

**17.      California Law.**  This Guaranty shall be governed by and construed according to the laws of California, and, except as provided in any alternative dispute resolution agreement executed between

Guarantor and Administrative Agent, Guarantor submits to the non-exclusive jurisdiction of the state or federal courts in said state.

**18.     Dispute Resolution.**   This Guaranty hereby incorporates any alternative dispute resolution agreement previously, concurrently or hereafter executed between Guarantor and Administrative Agent.

**19.     Reporting Requirements.**   Guarantor shall annually furnish to Administrative Agent (i) a personal financial statement within one hundred eighty (180) days following the close of each Fiscal Year, and (ii) its federal income tax return (including all K-1s and other schedules) as soon as available and in no event later than fifteen (15) days after filing.

**20.     Counterparts.**   This Guaranty may be executed in one or more counterparts, each of which, when so executed, shall be deemed an original, and all of which, taken together, shall be deemed to constitute but one and the same instrument.

**21.     Reaffirmation.**   In connection with the Fifth Modification, each Guarantor (a) consents to the execution of the Fifth Amendment, and (b) reaffirms its obligations under the Fifth Amended and Restated Continuing Guaranty dated as of March 25, 2019, as amended from time to time (as amended, the "**2019 Guaranty**"), and reaffirms and restates each and every term, condition, and provision of the 2019 Guaranty.  Each Guarantor further reaffirms that its obligations under the 2019 Guaranty are primary and are separate and distinct from the obligations of Borrower under the Loan Agreement, as amended by the Fifth Modification.  Each Guarantor further represents and warrants that the 2019 Guaranty remains in full force and effect.

*[Remainder of page intentionally left blank]*

Executed as of October 30, 2024.  Guarantor acknowledges having received a copy of this Guaranty and having made each waiver contained in this Guaranty with full knowledge of its consequences.

ADMINISTRATIVE AGENT:

**U.S. BANK NATIONAL ASSOCIATION,**
**successor in interest to MUFG UNION BANK,**
**N.A.**

By: _Karen E. Boyer_
Name:   Karen E. Boyer
Title:    Senior Vice President

GUARANTORS:

_____
**DARIUS ASSEMI**, an individual

_____
**FARID ASSEMI**, an individual

_____
**FARSHID ASSEMI**, an individual

_____
**DARIUS ASSEMI**, as trustee of the Amended and
Restated Darius Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Amended and
Restated Farid Assemi Revocable Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Amended
and Restated Farshid Assemi and Sonia Rosemary
Assemi Revocable Trust

_____
**SONIA ROSEMARY ASSEMI**, as co-trustee of the
Amended and Restated Farshid Assemi and Sonia
Rosemary Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Farshid Assemi
1997 Ranch Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Farid
Assemi 1997 Ranch Trust

_____
**NEEMA ELIOT ASSEMI**, as co-trustee of the
Farid Assemi 1997 Ranch Trust

Executed as of October 30, 2024.  Guarantor acknowledges having received a copy of this Guaranty and having made each waiver contained in this Guaranty with full knowledge of its consequences.

ADMINISTRATIVE AGENT:

**U.S. BANK NATIONAL ASSOCIATION, successor in interest to MUFG UNION BANK, N.A.**

By: _____
Name:  Karen E. Boyer
Title:    Senior Vice President

GUARANTORS:

_____
**DARIUS ASSEMI**, an individual

_____
**FARID ASSEMI**, an individual

_____
**FARSHID ASSEMI**, an individual

_____
**DARIUS ASSEMI**, as trustee of the Amended and Restated Darius Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Amended and Restated Farid Assemi Revocable Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
**SONIA ROSEMARY ASSEMI**, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Farshid Assemi 1997 Ranch Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Farid Assemi 1997 Ranch Trust

_____
**NEEMA ELLIOT ASSEMI**, as co-trustee of the Farid Assemi 1997 Ranch Trust

Executed as of October 30, 2024.  Guarantor acknowledges having received a copy of this Guaranty and having made each waiver contained in this Guaranty with full knowledge of its consequences.

ADMINISTRATIVE AGENT:

**U.S. BANK NATIONAL ASSOCIATION, successor in interest to MUFG UNION BANK, N.A.**

By: _____
Name:  Karen E. Boyer
Title:   Senior Vice President

GUARANTORS:

_____
**DARIUS ASSEMI**, an individual

_____
**FARID ASSEMI**, an individual

_____
**FARSHID ASSEMI**, an individual

_____
**DARIUS ASSEMI**, as trustee of the Amended and Restated Darius Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Amended and Restated Farid Assemi Revocable Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
**SONIA ROSEMARY ASSEMI**, as co-trustee of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust

_____
**FARID ASSEMI**, as trustee of the Farshid Assemi 1997 Ranch Trust

_____
**FARSHID ASSEMI**, as co-trustee of the Farid Assemi 1997 Ranch Trust

_____
**NEEMA ELIOT ASSEMI**, as co-trustee of the Farid Assemi 1997 Ranch Trust

**MELISSA LAYNE**, as trustee of the Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010

**NEEMA ASSEMI**, as trustee of The Farid Assemi 2010 Grantor Trust dated December 30, 2010

Address for notices to Administrative Agent:

**U.S. Bank National Association, successor in interest to MUFG Union Bank, N.A.**
1095 Avenue of the Americas, 15th Floor
New York, NY 10036
Attn:  Karen E. Boyer, Senior Vice President

with a copy to:

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4106
Attn:  Michael M. Lauter, Esq.

Address for notices to Guarantors:

Darius Assemi
7297 N. Geraldine
Fresno, CA 93711

Farid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Farshid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Darius Assemi, Trustee
Amended and Restated Darius Assemi Revocable
    Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Farid Assemi, Trustee
Farid Assemi Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Farshid Assemi & Sonia Rosemary Assemi,
    Co-Trustees
Farshid Assemi and Sonia Rosemary Assemi
    Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Farid Assemi, Trustee
Farshid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Farshid Assemi & Neema Eliot Assemi, Co-
    Trustees
Farid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Ashley Whelan, Trustee
The Farshid and Sonia Assemi 2010 Grantor
    Trust dated December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Neema Assemi, Trustee
The Farid Assemi 2010 Grantor Trust dated
    December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

S 8

**EXHIBIT F**



June 20, 2024

**VIA EMAIL & OVERNIGHT COURIER**

Borrowers:
Maricopa Orchards, LLC, et al.          McDermott Will & Emery LLP
5260 N. Palm Ave., Suite 421            David R. Hurst, Esq.
Fresno, CA 93704                        The Brandywine Building
Attn: Elizabeth A. Steinhauer-Clark, Esq.    1000 N West Street, Suite 1400
                                        Wilmington, DE  19801

                                        John P. Hammond, Esq.
                                        444 West Lake Street
                                        Chicago, IL  60606-0029


        Re:     Notice of Acceleration; Demand for Payment in Full; Notice of Implementation of
Default Rate of Interest, and Reservation of Rights

        Reference is made to that certain Second Amended and Restated Loan and Security
Agreement dated as of March 25, 2019 (as amended, restated, supplemented or otherwise
modified from time to time, the "Credit Agreement"), by and among Maricopa Orchards, LLC, a
California limited liability company ("Maricopa"), as a Borrower and the Borrower Representative,
and each of the other Borrowers party thereto from time to time (together with Maricopa, the
"Borrowers"), the lenders party thereto from time to time (the "Lenders"), U.S. Bank National
Association (as successor in interest to MUFG Union Bank, N.A. ("U.S. Bank")), in its capacity as
administrative agent for the Lenders (in such capacity, the "Administrative Agent").  Capitalized
terms appearing herein and not otherwise defined herein are used as defined in the Credit
Agreement.

        Reference is also made to those certain notices of events of default and reservation of
rights delivered by the Administrative Agent to the Borrowers on the following dates:  August 8,
2023; November 9, 2023; January 25, 2024; February 6, 2024; and June 3, 2024 (together, the
"Prior Default Letters"), which provided the Borrower with notice of the occurrence of several
Events of Default under the Credit Agreement (the "Outstanding Events of Default").

        NOTICE IS HEREBY GIVEN that as a result of the Outstanding Events of Default, and
pursuant to Section 8.2 of the Credit Agreement, the Administrative Agent on behalf of the
Lenders hereby elects to accelerate all amounts due thereunder, including all principal, accrued
interest, reimbursable expenses, and other amounts owing and outstanding under the Credit
Agreement, and declare all such amounts immediately due and payable in full.  The Administrative
Agent and Lenders are thus entitled to and hereby demand from Borrowers immediate payment
in the amount of $149,000,000.00 of principal, plus all accrued fees, costs, and other charges.

Maricopa Orchards, LLC, *et al.*
Page 2

The above amounts do not include reimbursable costs and expenses (including attorneys' fees) under the Loan Documents, the amount of which will be furnished upon request.

NOTICE IS HEREBY FURTHER GIVEN that because of the Outstanding Events of Default, under Section 8.2(a) of the Credit Agreement, the Administrative Agent hereby terminates the Lenders' obligations to make further Loans, thus reducing the Revolving Commitment under the Credit Agreement to the current outstanding principal balance of $149,000,000.00.

NOTICE IS HEREBY FURTHER GIVEN that as a consequence of the Outstanding Events of Default, the Administrative Agent and Lenders are implementing the default rate of interest applicable under Sections 2.2(b) and 8.2 of the Credit Agreement, effective as of the date of this letter.  The Administrative Agent and Lenders shall begin to charge the default rate of interest on all amounts outstanding under the Loan as of this date.

Nothing contained in this letter shall operate as a waiver of, or consent to, a modification or amendment of, or forbearance with respect to any Outstanding Event of Default, any term or condition of the Credit Agreement or any other Loan Document (including any default or event of default) or any other right, power or remedy of the Administrative Agent and Lenders under the Loan Documents and/or applicable law.  No delay on the part of the Administrative Agent and Lenders in the exercise of any remedy, power, right or privilege under the Loan Documents shall impair such remedy, power, right or privilege or be construed to be a waiver of any default or event of default (including an Outstanding Event of Default).  Further, no acceptance by the Administrative Agent or Lenders of any payment shall operate as a waiver of any default or event of default (including any Outstanding Event of Default), or of any of the Administrative Agent or Lenders' rights and remedies under the Loan Documents and applicable law.  The Administrative Agent and Lenders hereby expressly reserve all of their remedies, powers, rights or privileges under the Loan Documents, at law, in equity or otherwise.  Any and all rights available to the Administrative Agent and Lenders shall be cumulative and may be exercised separately, successively or concurrently at its sole discretion.

Any present or future negotiations or discussions with the Administrative Agent or Lenders or their representatives regarding the Loan Documents shall not be binding on the Administrative Agent or Lenders, unless and until an agreement in writing is signed by an authorized representative of the Administrative Agent or Lenders.

Maricopa Orchards, LLC, *et al.*
Page 3

If you have any questions, please contact the undersigned.

Very truly yours,

U.S. BANK NATIONAL ASSOCIATION (as
successor in interest to MUFG UNION BANK,
N.A.), as Administrative Agent

By: _____

Name: Karen Boyer
Title:   Senior Vice President


cc:     Julie Ebert, Esq.
        Mick Lauter, Esq.
        John Hammond, Esq.

SMRH:4884-1431-3382.8

**EXHIBIT G**



September 15, 2024

## VIA EMAIL & OVERNIGHT COURIER

Guarantor:
Darius Assemi
7297 N. Geraldine Avenue
Fresno, CA 93711

Guarantor:
Darius Assemi, Trustee
Amended and Restated Darius Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi, Trustee
Amended and Restated Farid Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi & Neema Eliot Assemi,
Co-Trustees
Farid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Neema Assemi, Trustee
The Farid Assemi 2010 Grantor Trust dated
December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi & Sonia Rosemary Assemi,
Co-Trustees
Amended and Restated Darius Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi, Trustee
Farshid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Ashley Whelan, Trustee
The Farshid and Sonia Assemi 2010 Grantor
Trust dated December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Re:   Renewed Demand for Payment in Full; and Reservation of Rights

Reference is made to that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among Maricopa Orchards, LLC, a California limited liability company ("Maricopa"), as a Borrower and the Borrower Representative, and each of the other Borrowers party thereto from time to time (together with Maricopa, the "Borrowers"), the lenders party thereto from time to time (the "Lenders"), U.S. Bank National Association (as successor in interest to MUFG Union Bank, N.A. ("U.S. Bank")), in its capacity as administrative agent for the Lenders (in such capacity, the "Administrative Agent"). Capitalized terms appearing herein and not otherwise defined herein are used as defined in the Credit Agreement.

Reference is further made to the Fifth Amended and Restated Continuing Guaranty (the "Guaranty") executed by each of Darius Assemi; the Amended and Restated Darius Assemi Revocable Trust; Farid Assemi; the Amended and Restated Farid Assemi Revocable Trust; the Farid Assemi 1997 Ranch Trust; Farshid Assemi; the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust; the Farshid Assemi 1997 Ranch Trust; The Farid Assemi 2010 Grantor Trust dated December 30, 2010; and The Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010 (collectively, the "Guarantors"), guaranteeing all of the Obligations of Borrowers to the Administrative Agent and the Lenders under the Loan Documents.

Reference is further made to those certain notices of events of default and reservation of rights delivered by the Administrative Agent to the Borrowers on the following dates: August 8, 2023; November 9, 2023; January 25, 2024; February 6, 2024; and June 3, 2024 (together, the "Prior Default Letters"), which provided the Borrowers with notice of the occurrence of several Events of Default under the Credit Agreement (the "Outstanding Events of Default").

Reference is further made to that certain Notice of Acceleration; Demand for Payment in Full; Notice of Implementation of Default Rate of Interest, and Reservation of Rights dated June 20, 2024 (the "Notice of Acceleration"), which provided the Borrowers with the Administrative Agent's election, on behalf of the Lenders, to accelerate all amounts due under Section 8.2 of the Credit Agreement, including all principal, accrued interest, reimbursable expenses, and other amounts owing and outstanding under the Credit Agreement, and declare all such amounts immediately due and payable in full.

NOTICE IS HEREBY FURTHER GIVEN THAT pursuant to the Guaranty, the Administrative Agent and Lenders hereby demand that the Guarantors immediately pay to the Administrative Agent all amounts due under the Credit Agreement and associated Loan Documents, or $149,000,000.00 of principal, plus all accrued interest, fees, costs, and other charges.

Nothing contained in this letter shall operate as a waiver of, or consent to, a modification or amendment of, or forbearance with respect to any Outstanding Event of Default, any term or condition of the Credit Agreement or any other Loan Document (including any default of event of default) or any other right, power or remedy of the Administrative Agent and Lenders under the Loan Documents and/or applicable law. No delay on the part of the Administrative Agent and Lenders in the exercise of any remedy, power, right or privilege under the Loan Documents shall impair such remedy, power, right or privilege or be construed to be a waiver of any default or event of default (including an Outstanding Event of Default). Further, no acceptance by the Administrative Agent or Lenders of any payment shall operate as a waiver of any default or event

of default (including any Outstanding Event of Default), or of any of the Administrative Agent or Lenders' rights and remedies under the Loan Documents and applicable law. The Administrative Agent and Lenders hereby expressly reserve all of their remedies, powers, rights or privileges under the Loan Documents, at law, in equity or otherwise. Any and all rights available to the Administrative Agent and Lenders shall be cumulative and may be exercised separately, successively or concurrently at its sole discretion.

If you have any questions, please contact the undersigned.

Very truly yours,

U.S. BANK NATIONAL ASSOCIATION (as successor in interest to MUFG UNION BANK, N.A.), as Administrative Agent

By: _____
Name: Karen Boyer
Title: Senior Vice President

cc:   Julie Ebert, Esq.
      Mick Lauter, Esq.
      John Hammond, Esq.
      Maricopa Orchards, LLC
      ACDF, LLC
      C & A Farms, LLC
      Lincoln Grantor Farms, LLC
      Cantua Orchards, LLC
      Favier Ranch, LLC
      Grantland Farms, LLC
      Whitesbridge Farms, LLC
      Panoche Pistachios, LLC
      Sageberry Farms, LLC
      ACAP Farms, LLC

      Ashlan & Hayes Farms, LLC
      Bear Flag Farms, LLC
      Copper Avenue Investments, LLC
      Willow Avenue Investments, LLC
      A&H Investments, LLC
      Granville Farms, LLC
      FNF Farms, LLC
      Kamm South, LLC
      Gradon Farms, LLC
      Manning Avenue Pistachios, LLC
      Winston Farms, LLC
      FFGT Farms, LLC
      Adams Grantor Land, LLC
      Assemi and Sons, Inc.

**EXHIBIT H**



November /2, 2024

**VIA EMAIL & OVERNIGHT COURIER**

Maricopa Orchards, LLC
5260 N. Palm Ave., Suite 421
Fresno, CA 93704
Attn: Elizabeth A. Steinhauer-Clark, Esq.

Re:     Sixth Notice of Events of Default; Reservation of Rights Letter

Reference is made to that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among Maricopa Orchards, LLC, a California limited liability company ("Maricopa"), as a Borrower and the Borrower Representative, and each of the other Borrowers party thereto from time to time (together with Maricopa, the "Borrowers"), the lenders party thereto from time to time (the "Lenders"), U.S. Bank National Association (as successor in interest to MUFG Union Bank, N.A. ("U.S. Bank")), in its capacity as administrative agent for the Lenders (in such capacity, the "Administrative Agent"). Capitalized terms appearing herein and not otherwise defined herein are used as defined in the Credit Agreement.

Reference is further made to the Fifth Amended and Restated Continuing Guaranty (the "Guaranty") executed by each of Darius Assemi; the Amended and Restated Darius Assemi Revocable Trust; Farid Assemi; the Amended and Restated Farid Assemi Revocable Trust; the Farid Assemi 1997 Ranch Trust; Farshid Assemi; the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi Revocable Trust; the Farshid Assemi 1997 Ranch Trust; The Farid Assemi 2010 Grantor Trust dated December 30, 2010; and The Farshid and Sonia Assemi 2010 Grantor Trust dated December 30, 2010 (collectively, the "Guarantors"), guaranteeing all of the Obligations of Borrowers to the Administrative Agent and the Lenders under the Loan Documents.

Reference is also made to that certain Notice of Events of Default; Reservation of Rights Letter delivered by the Administrative Agent to the Borrowers on August 8, 2023, that certain Supplemental Notice of Events of Default; Reservation of Rights Letter dated November 9, 2023, that certain Third Notice of Events of Default; Reservation of Rights Letter dated January 25, 2024, that certain Fourth Notice of Events of Default; Reservation of Rights Letter dated February 6, 2024, and that Fifth Notice of Events of Default; Reservation of Rights Letter dated June 3, 2024 (together, the "Prior Default Letters"), which provided the Borrower with notice of the occurrence of several Events of Default under the Credit Agreement (the "Existing Events of Default").

This letter serves to give notice to Borrowers of the following additional Event of Default under the Credit Agreement in addition to the Existing Events of Default (the "Additional Event of Default"):

- An Event of Default has occurred under <u>Section 8.1(b)</u> of the Credit Agreement as additional and separate amounts owed by the Borrowers to the Lenders in connection with that certain Harvest Line Promissory Note dated October 30, 2024 (the "<u>Harvest Line Note</u>") matured and became fully due and payable on November 7, 2024. The Borrowers have failed to pay the amounts due to the Lenders under the Harvest Line Note.

The above Additional Event of Default and the Existing Events of Default shall be referred to collectively as the "<u>Acknowledged Defaults</u>".

Borrowers and Guarantors are hereby notified that the Acknowledged Defaults constitute Events of Default for all purposes under the Credit Agreement and the other Loan Documents, including, without limitation, for purposes of determining whether or not certain actions may be taken or omitted to be taken or otherwise acquiesced to by or on behalf of any Borrower or Guarantor, as set forth therein. Accordingly, any action taken or omitted to be taken or acquiesced in, as applicable, by any Borrower or any Guarantor in violation of any such provision while any Event of Default exists will constitute an additional Event of Default under the Credit Agreement and the other Loan Documents. Furthermore, the Acknowledged Defaults constitute Events of Default for purposes of determining whether Borrowers have satisfied the conditions to obtaining additional Loans under the terms of the Credit Agreement. Accordingly, the Administrative Agent and the Lenders do not intend to advance additional funds under the Credit Agreement on and after the date hereof, unless otherwise agreed by the Administrative Agent and the Lenders in writing at their sole discretion.

The Administrative Agent and the Lenders are presently evaluating whether to exercise any further rights and remedies available to the Administrative Agent and the Lenders under the Credit Agreement, the other Loan Documents, and applicable law, in equity or otherwise, in respect of the Acknowledged Defaults. This Notice shall not be deemed (a) to be a waiver of, or consent to, a modification or amendment of, any term or condition of the Credit Agreement or any other Loan Document, (b) to prejudice any other right or rights which the Administrative Agent or the Lenders may now have or may have in the future under or in connection with the Credit Agreement or the other Loan Documents or any of the instruments or agreements referred to therein, as the same may be amended, restated, supplemented or otherwise modified from time to time, (c) to be a commitment or any other undertaking or expression of any willingness to engage in any further discussion with the Borrower Representative, any Borrower, any Guarantor or any other Person with respect to any waiver, amendment, modification or any other change to the Credit Agreement or the Loan Documents or any rights or remedies arising in favor of the Lenders, the Administrative Agent, or any of them, under or with respect to any such documents or (d) to be a waiver of, or consent to, or a modification or amendment of, any other term or condition of any other agreement by and among any Borrower or Guarantor, on the one hand, and the Administrative Agent or any other Lender, on the other hand.

Please be advised that, among other remedies, the entire principal balance and all other amounts owing under the Loan Documents have already been accelerated pursuant to the Administrative Agent's letter dated June 20, 2024, such that principal, accrued interest, and all other amounts owed under the Loan Documents are fully due and owing. The Administrative

Agent and the Lenders hereby expressly reserve all of their rights and remedies with respect to the Acknowledged Defaults and any other Defaults or Events of Default which may now or hereafter exist under the Credit Agreement or the other Loan Documents.

Nothing herein shall be deemed to constitute (i) an establishment of a course of dealing or (ii) a waiver by the Administrative Agent or the Lenders of any rights or remedies under the Credit Agreement or the other Loan Documents or applicable law (including, without limitation, acceleration of debt, realization on any collateral and enforcement of any of the Security Documents), including any such right or remedy of the Administrative Agent or the Lenders arising out of the Acknowledged Defaults or any other Default or Event of Default, nor shall it prejudice or be deemed to constitute a waiver of, or estoppel, or forbearance by the Administrative Agent or the Lenders with respect to, or be a bar to, the exercise by the Administrative Agent or the Lenders of their rights or remedies at a later date. Nothing herein shall be deemed to constitute a commitment or agreement to enter into any other agreement or arrangement as to the Acknowledged Defaults or otherwise.

Nothing herein or in previous or subsequent communications or discussions between the Borrower, the Borrower's counsel, the Administrative Agent or the Administrative Agent's counsel shall prejudice or be deemed to constitute a waiver of, or estoppel or forbearance by the Administrative Agent or the Lenders with respect to, any of their rights and remedies under the Credit Agreement, the other Loan Documents or applicable law, all of which are expressly reserved. The Administrative Agent and the Lenders have not agreed to forbear with respect to any of their rights or remedies concerning the Acknowledged Defaults or any other Default or Event of Default occurring at any time. Any agreement by the Administrative Agent or the Lenders to waive, or to forbear from exercising their rights and remedies, is required to be in writing and executed and delivered in accordance with the requirements of <u>Section 11.16(b)</u> of the Credit Agreement. Nothing contained in this Notice shall confer on any Borrower, any Guarantor or any other Person any right to notice or cure periods with respect to any Default or Event of Default, including without limitation the Acknowledged Defaults.

*Signature Page to Follow*

Very truly yours,

U.S. BANK NATIONAL ASSOCIATION (as
successor in interest to MUFG UNION BANK,
N.A.), as Administrative Agent

By: _Karen Boyer_____

Name: Karen Boyer
Title: Senior Vice President

cc:   Julie Ebert, Esq.

Mick Lauter, Esq.

John Hammond, Esq.

Darius Assemi

Farid Assemi

Farshid Assemi

Darius Assemi, as Trustee of the Amended and Restated Darius Assemi Revocable Trust

Farid Assemi, as Trustee of the Amended and Restated Farid Assemi Revocable Trust

Farshid Assemi, as co-trustee of the Amended and Restated Farshid Assemi and Sonia
    Rosemary Assemi Revocable Trust

Sonia Rosemary Assemi, as co-trustee of the Amended and Restated Farshid Assemi and
    Sonia Rosemary Assemi Revocable Trust

Farid Assemi, as trustee of The Farshid Assemi 1997 Ranch Trust

Farshid Assemi, as co-trustee of The Farid Assemi 1997 Ranch Trust

Neema Eliot Assemi, as co-trustee of The Farid Assemi 1997 Ranch Trust

Melissa Layne, as trustee of The Farshid and Sonia Assemi 2010 Grantor Trust Dated
    December 30, 2010

Neema Assemi, as trustee of The Farid Assemi 2010 Grantor Trust dated December
    30, 2010

**EXHIBIT I**



November 12, 2024

**VIA EMAIL & OVERNIGHT COURIER**

Guarantor:
Darius Assemi
7297 N. Geraldine Avenue
Fresno, CA 93711

Guarantor:
Darius Assemi, Trustee
Amended and Restated Darius Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi, Trustee
Amended and Restated Farid Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi & Neema Eliot Assemi,
Co-Trustees
Farid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Neema Assemi, Trustee
The Farid Assemi 2010 Grantor Trust dated
December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farshid Assemi & Sonia Rosemary Assemi,
Co-Trustees
Amended and Restated Darius Assemi
Revocable Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Farid Assemi, Trustee
Farshid Assemi 1997 Ranch Trust
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

Guarantor:
Melissa Layne, Trustee
The Farshid and Sonia Assemi 2010 Grantor
Trust dated December 30, 2010
5260 N. Palm Avenue, Suite 421
Fresno, CA 93704

        Re:    Demand for Payment in Full Under Harvest Line Guaranty; and Reservation of
Rights

Reference is made to that certain Second Amended and Restated Loan and Security Agreement dated as of March 25, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among Maricopa Orchards, LLC, a California limited liability company ("Maricopa"), as a Borrower and the Borrower Representative, and each of the other Borrowers party thereto from time to time (together with Maricopa, the "Borrowers"), the lenders party thereto from time to time (the "Lenders"), U.S. Bank National Association (as successor in interest to MUFG Union Bank, N.A. ("U.S. Bank")), in its capacity as administrative agent for the Lenders (in such capacity, the "Administrative Agent"). Capitalized terms appearing herein and not otherwise defined herein are used as defined in the Credit Agreement.

Reference is further made to the Guaranty of Harvest Line Commitment and Reaffirmation of Fifth Amended and Restated Continuing Guaranty (the "Harvest Line Guaranty") executed by the Guarantors on or about October 30, 2024.  Pursuant to the Harvest Line Guaranty, the Guarantors have guaranteed all of the Obligations of Borrowers to the Administrative Agent and the Lenders under that certain Harvest Line Promissory Note dated October 30, 2024 (the "Harvest Line Note").

Reference is also made to that certain notice of default of even date herewith notifying Borrowers that, among other things, an additional Event of Default has occurred under the Credit Agreement by reason of the maturity date of the Harvest Line Note having passed on November 7, 2024 without all amounts owed thereunder having been paid in full (together with all prior noticed events of default under the Credit Agreement and related loan documents, the "Outstanding Events of Default").

NOTICE IS HEREBY GIVEN THAT pursuant to the occurrence and ongoing Outstanding Events of Default, which have not been cured and the Harvest Line Guaranty, the Administrative Agent and Lenders hereby demand that the Guarantors immediately pay to the Administrative Agent all amounts due under the Harvest Line Note, Credit Agreement and Loan Documents associated with the Harvest Line Note, or $11,580,840.00 of principal, plus all accrued interest, fees, costs, and other charges.

Please note that the Guarantors' obligations under the Harvest Line Guaranty are separate from and in addition to their obligations under the Fifth Amended and Restated Continuing Guaranty dated March 25, 2019 (the "Guaranty"), as to which the Administrative Agent previously sent to the Guarantors a demand, and which Guaranty the Guarantors reaffirmed in connection with the Harvest Line Guaranty.  Nothing contained in this letter shall operate as a waiver of, or consent to, a modification or amendment of, or forbearance with respect to any Outstanding Event of Default, any term or condition of the Credit Agreement or any other Loan Document (including any default of event of default) or any other right, power or remedy of the Administrative Agent and Lenders under the Loan Documents and/or applicable law.  No delay on the part of the Administrative Agent and Lenders in the exercise of any remedy, power, right or privilege under the Loan Documents shall impair such remedy, power, right or privilege or be construed to be a waiver of any default or event of default (including an Outstanding Event of Default).  Further, no acceptance by the Administrative Agent or Lenders of any payment shall operate as a waiver of any default or event of default (including any Outstanding Event of Default), or of any of the Administrative Agent or Lenders' rights and remedies under the Loan Documents and applicable law.  The Administrative Agent and Lenders hereby expressly reserve all of their remedies, powers, rights

or privileges under the Loan Documents, at law, in equity or otherwise.  Any and all rights available to the Administrative Agent and Lenders shall be cumulative and may be exercised separately, successively or concurrently at its sole discretion.

If you have any questions, please contact the undersigned.

Very truly yours,

U.S. BANK NATIONAL ASSOCIATION (as successor in interest to MUFG UNION BANK, N.A.), as Administrative Agent

By: _Karen Boyer_____
Name: Karen Boyer
Title:   Senior Vice President

cc:     Julie Ebert, Esq.
        Mick Lauter, Esq.
        John Hammond, Esq.
        Maricopa Orchards, LLC
        ACDF, LLC
        C & A Farms, LLC
        Lincoln Grantor Farms, LLC
        Cantua Orchards, LLC
        Favier Ranch, LLC
        Grantland Farms, LLC
        Whitesbridge Farms, LLC
        Panoche Pistachios, LLC
        Sageberry Farms, LLC
        ACAP Farms, LLC
        Ashlan & Hayes Farms, LLC
        Bear Flag Farms, LLC
        Copper Avenue Investments, LLC
        Willow Avenue Investments, LLC
        A&H Investments, LLC
        Granville Farms, LLC
        FNF Farms, LLC
        Kamm South, LLC
        Gradon Farms, LLC
        Manning Avenue Pistachios, LLC
        Winston Farms, LLC
        FFGT Farms, LLC
        Adams Grantor Land, LLC
        Assemi and Sons, Inc.